MURFIN v. DETROIT & ERIN PLANK-ROAD CO.

TOLL ROADS—BICYCLES—CONSTRUCTION OF STATUTE.
   A plank-road company incorporated under the general act of 1848 ( 1 How. Stat. chap. 96 ), and having the right, under section 17 of the act ( 1 How. Stat. § 3582 ), to exact tolls from persons traveling on the road in a specified sum "for every vehicle, sled, sleigh, or carriage drawn by animals," has no authority to require toll of a bicyclist.

Error to Wayne; Steere, J., presiding.   Submitted June 17, 1897.   Decided July 13, 1897.

Case by James O. Murfin against the Detroit & Erin Plank-Road Company for preventing plaintiff from riding a bicycle upon defendant's road without the payment of toll.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Gray & Gray ( Charles M. Swift,* of counsel), for appellant.

*Griffin, Clark & Russell,* for appellee.

HOOKER, J. This is an action brought against a toll-road company for stopping the plaintiff at defendant's toll-gate, and preventing him from proceeding to ride a bicycle upon its road without the payment of toll. The case was tried before the court without a jury, and judgment was rendered in favor of the plaintiff.

The only question submitted is that of the right of the defendant to charge toll for the use of its road by persons riding bicycles. The rights of the defendant are statutory, and its right to charge toll is to be determined by section 3582, 1 How. Stat., viz.:

"Whenever any such company shall have completed their road, or any five consecutive miles thereof, the directors thereof may erect toll-gates, and exact tolls from persons traveling on their road, for so much as may be completed, at a rate not exceeding two cents per mile for any vehicle or carriage drawn by two animals, and one cent per mile for every sled or sleigh so drawn, and, if drawn by more than two animals, three-quarters of a cent per mile for every additional animal; for every vehicle, sled, sleigh, or carriage drawn by one animal, one cent a mile; for every score of sheep or swine, half a cent a mile; for every score of neat cattle, two cents a mile; and for every horse and rider, or led horse, one cent a mile. Such toll-gates so to be erected by such company may be as many in number, and located at such points, as such company may deem necessary."

If we could construe this statute as giving a right to collect tolls from all persons who travel the road, there would be little difficulty in holding that bicycles (which we held to be vehicles in *Myers* v. *Hinds*, 110 Mich. 300) are subject to toll, for we may take judicial notice that a good highway is as essential to their use as to that of any other vehicle. There is nothing in this act that gives the right to charge toll against pedestrians, and we have never heard it claimed that such charges were made. Nor have we known of toll being charged for wheelbarrows, or carts, or hand sleds, or baby carriages propelled by human agency, though a good road is as essential to these as to bicycles. If this question arose with reference to

a four-wheeled vehicle propelled by steam or electricity, there would probably be little doubt of the right to charge and collect toll. It would seem to be covered by the case of *Detroit, etc., Plank-Road Co.* v. *Detroit Suburban R. Co.*, 103 Mich. 585, where it was held that the rights acquired under this act forbid the use of the highway for purposes inconsistent with the rights and franchises of the plank-road company. The use of two wheels instead of four, if propelled by a motor, as they are liable any day to be, would hardly suffice to distinguish them from the heavier and more cumbersome vehicle; and we hesitate to say that the courts could with propriety hold that a motor cycle could escape tolls under this statute, notwithstanding the fact that only vehicles drawn by animals are mentioned in the act.

We think, however, that a distinction may be made between vehicles propelled by man and those depending upon animal power or mechanical motors for propulsion, and that this would not do violence to the act, which has always been construed to permit the use of highways by persons who did not depend upon some means of conveyance besides their own powers of locomotion. The bicycle of today is propelled and managed by the feet and hands of the rider. It uses the traveled roadway only when it is the better part of the highway, and the pedestrian does the same. The projected electric railroad involved in the case of *Detroit, etc., Plank-Road Co.* v. *Detroit Suburban R. Co.*, *supra*, was not expected to use the roadway constructed by the plank-road company, but one to be built for its exclusive use, and one adapted to no other kind of vehicle. It seems reasonable to say, therefore, that the case cannot be allowed to turn simply on the question whether the defendant's roadway is likely to be used by the bicycle, as that is not the controlling factor in the case of the electric road, which is forbidden, or the pedestrian, who is not forbidden, to travel any part of the road without paying toll. The bicycle is not subject to the payment of toll by the strict letter of

the act. Neither is the motor cycle. Yet we incline to the opinion that payment of toll by the driver of the latter is within the spirit, while such payment by the user of the former is not, because of the apparent intention to confine the payment of toll to those who do not depend upon their own powers of locomotion for the propulsion of the vehicle used. This view seems to receive significant support in the fact that we find few cases where the question has arisen. The bicycle has been used as a road machine for a quarter of a century, and we cannot conceive of the users submitting to a general practice of charging toll without protest that would have led to an adjudication of the question. Furthermore, we have never heard that it was the practice of the companies to charge toll, and we have reason to believe that this company is no exception, but that the cause is here to ascertain whether the company may safely provide exceptional facilities for wheelmen, with the expectation of collecting toll.

But two cases where similar questions have arisen are cited by counsel. In *Geiger* v. *Turnpike Road*, 167 Pa. St. 582, a bicycle was held subject to toll, as a two-wheeled carriage, under a statute which gave the right to collect toll from—

"All and every person and persons using the said road, * * * and to stop any person driving any * * * sulky, chair, chaise, phaeton, cart, wagon, sleigh, sled, or other carriage of burthen or pleasure, * * * and for every other carriage of pleasure, under whatever name it may go, the like sums, according to the number of wheels and horses drawing the same." Act March 25, 1805, § 11.

The court held that this was a "carriage of burthen or pleasure;" and what is more significant, from the standpoint from which we view the case, is the view taken of the word "horses," as used in the statute. It is said that "the method of computation by wheels and horses is not the power to collect toll, which is expressly given. That

is a mere limitation on the power.   The demand must not exceed the sum specified for the animals and vehicles enumerated." This reasoning is at variance with our view, and it seems to us that it is at variance with immunity from tolls on the part of the pedestrian, who, as said of the bicyclist in that case, "has the same right as owners of carriages to insist that the highway shall be maintained in a reasonably safe condition of repair." A Pennsylvania statute is cited giving the bicyclist the right to use the highway, the same as any other vehicle, but we think it was declaratory of the common law merely; and, if it were not, it could hardly be held to affect the rights of a turnpike company under a charter granted half a century before practical bicycles were invented.

This question arose in England under a statute which gave the right to collect tolls as follows:

"For every horse, mule, or other beast drawing any coach, sociable, chariot, berlin, landau, vis-a-vis, barouche, phaeton, curricle, calash, chaise, chair, gig, whiskey, caravan, hearse, litter, or other such carriage, the sum of 6d.; for every horse, mule, or ass, laden or unladen, and not drawing, the sum of 2d.; and for every carriage of whatever description, and for whatever purpose, which should be drawn or impelled, or set or kept in motion, by steam, or any other power or agency than being drawn by any horse or horses, or other beast or beasts of draught, any sum not exceeding 5s." 3 Wm. IV. chap. 55; *Williams* v. *Ellis*, 5 Q. B. Div. 175.

In a short opinion, the court held that a bicycle is not a carriage, within the meaning of the turnpike act; that carriages there referred to must be carriages *ejusdem generis* with the carriages previously specified, which, as the act imports, were carriages propelled otherwise than by human agency.   We should hesitate to say that the right to charge tolls was limited to conveyances *ejusdem generis* with those drawn by animals, which alone seem to be mentioned in our act.   Indeed, the case cited from 103 Mich. may be plausibly said to have settled that question; but we see no reason for refusing to apply the doctrine

to the broader class of vehicles propelled by animals or some mechanical motor. It seems to us that this distinction will protect the plank-road companies from a use of their road by substitutes for those vehicles which the law contemplated should be charged for, and at the same time protect the pedestrian in his increased power of locomotion by the aid of the wheel.

This view accords with that of the learned circuit judge who tried the cause, and his judgment is affirmed.

MOORE, J., concurred with HOOKER, J. LONG, C. J., GRANT and MONTGOMERY, JJ., concurred in the result.