PERU TURNPIKE COMPANY *v.* TOWN OF PERU.

PERU TURNPIKE COMPANY *v.* TOWN OF WINHALL.

February Term, 1917.

Present: MUNSON, C. J. WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed April 5, 1917.

*Turnpikes—Legislative Grant to Take Toll—Construction—Prescriptive Rights—Condemnation Proceedings—P. S. 3935 as Amended.*

In a legislative grant to take toll, nothing passes except what is granted either in express terms or by necessary implication.

A turnpike corporation chartered by Act of the Legislature and given thereby the right to take tolls for pedestrian, horse drawn vehicles and cattle passing over its road, has no right to take toll for automobiles, in the absence of a prescriptive right to do so, or of an assertion of a right for such time and under such circumstances as to amount to a practical construction of the franchise, if the latter doctrine applies in this jurisdiction.

Where a turnpike road and the real estate, easements and franchises belonging to it are taken by condemnation proceedings under P. S. 3935, as amended by No. 264, Acts 1912, a provision in the judgment

fixing the time for the removal of buildings, fences, wood and timber is unwarranted.

Two PETITIONS brought by the Peru Turnpike Company, a corporation organized under the provision of Chapter 92 of the Acts of 1814, against the selectmen of the town of Peru and the selectmen of the town of Winhall respectively, under P. S. 3835. Heard on the report of commissioners, appointed in accordance with the provisions of P. S. 3836 at the June Term, 1915, Bennington County, *Fish*, J., presiding. Judgment, accepting the report of the commissioners. The petitionees excepted.

The petitions were identical and alleged that the petitioner owned and operated a turnpike road extending through the towns of Peru and Winhall; that the selectmen of the two towns had served notice upon the petitioner to the effect that it was proposed to lay out a free public highway and to acquire through condemnation proceedings so much and the whole of the lands and easements in land and franchise belonging to the petitioner situated within the limits of the said towns; that in pursuance to the notice, the selectmen took the real estate, easement and franchises of the petitioner and adjudged that the taking was required for the convenience of the inhabitants of the towns and for the public good and necessity, and awarded damages to the petitioner. The petitioner alleged that it was dissatisfied with the adjudication of the selectmen, both as to the finding that the public good and necessity required the taking of its property and franchises and with the amount awarded to it as damages, and prayed that three disinterested freeholders should be appointed as commissioners, under P. S. 3836, to examine the premises and to inquire into the necessity of taking the same, and to assess the petitioner's damages if it were found that the public good or necessity required the taking.

The commissioners were appointed in accordance with the petition and made their report. They found that the necessity and convenience of inhabitants of the town and the public good and necessity required that a highway should be maintained over the route occupied by the Turnpike Company and also reported that, after having considered the original course of the turnpike road the capitalization of the company, the necessary cost of reconstructing the road, the sales of the shares of stock of the company, the incoming operating expenses thereof and all

other facts and circumstances tending to affect the income, the town of Peru should pay to the petitioner the amount of $3,144 and the town of Winhall the amount of $18,866.

The commissioners' report further stated that in determining the foregoing amounts, the income received from tolls charged for automobiles had been considered, and that the toll collected from each automobile was fifty cents, which was the same amount allowed to be collected by the charter of the company for a "four wheeled pleasure carriage drawn by two beasts." The report also stated that the attorneys for the towns claimed that the income derived from automobile tolls should not be taken into account and further stated that if that portion of the income ought to be eliminated, the value of the lands, easements and franchises in the town of Peru was $2,375, and in the town of Winhall the sum of $14,075. The charter of the company, contained in Chap. 92, Acts of 1814, which was referred to and made a part of the report, contained no provision for the collection of toll from automobiles, but provided only for the collection of toll for wheeled vehicles or sleighs drawn by beasts and for horses ridden over the road or horses, mules, cattle, sheep or swine driven over it.

The judgment rendered upon the report of the commissioners was that the towns should pay the larger amounts specified in the report, and that the Turnpike Company should recover its taxable costs. The judgment also provided that the time for the payment of damages should be October 12, 1916, and that the Turnpike Company should remove all buildings, fences, wood and trees from the real estate and easements, so taken within six months from the aforesaid date.

*Herbert G. Barber,* Attorney General, and *Robert C. Bacon* for the petitionee.

The turnpike company conducts a business affected with a public interest and is subjected to legislative control in respect to tolls, unless such regulation is contrary to the terms of the act of incorporation. *Covington, etc., Turnpike Road Co.* v. *Sanford,* 164 U. S. 578, 41 L. ed. 560, 17 Sup. Ct. 198; *Winchester, etc., Turnpike Road Company* v. *Croxton,* 98 Ky. 739, 34 S. W. 518, 33 L. R. A. 177; Railroad Commission Cases, 116

U. S. 307, 29 L. ed. 636; *Toll Road* v. *People*, 22 Colo. 429, 37 L. R. A. 711.

The charter of the Peru Turnpike Company confers no right to make a charge for vehicles not specifically provided for. It has been held that a turnpike company authorized to collect toll for the passage of certain vehicles drawn by animals cannot collect toll for the passage of bicycles. *Turnpike Co.* v. *Leppee*, 62 N. J. Law 92, 40 Atl. 681, 41 L. R. A. 457; *String* v. *Camden Turnpike Co.*, 57 N. J. Eq. 227, 40 Atl. 774.

It has been held that tolls cannot be charged to or collected from automobiles in the absence of express legislative authority. *Mallory* v. *Saratoga Lake Bridge Co.*, 104 N. Y. Supp. 1025.

*Frank C. Archibald* and *Rufus E. Brown* for the petitioner.

A turnpike company has the right to demand reasonable tolls from all vehicles passing over its road, though such right is not conferred by express terms, by its act of incorporation. *Geiger* v. *Perkiomen & Reading Turnpike Road*, 167 Pa. 582, 28 L. R. A. 458; *Bogle* v. *P. & R. Railroad Co.*, 54 Pa. 310; *Pa. Railroad Co.* v. *Sly*, 65 Pa. 205; *Murfin* v. *Detroit & Erin Plank Road Co.*, 113 Mich. 675, 67 Am. St. Rep. 489.

POWERS, J. "Whoever seeks to impose tolls must support his claim by plain words," said the Lord Chief Justice in *Portsmouth Bridge Co.* v. *Nance*, 46 E. C. L. 227. This proposition is nothing more than the application of a general rule too firmly established, both in England and America, to admit of question. It was laid down by Chief Justice Marshall in the Dartmouth College Case, 4 Wheat. 518, 4. L. ed. 629, as follows: "A corporation * * * being the mere creature of the law, * * * possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence." *State* v. *Clement Nat. Bank*, 84 Vt. at page 197, 78 Atl. 944, Ann. Cas. 1912 D, 22.

The right to collect tolls is a franchise, a sovereign prerogative and vests in an individual or corporation only when, and only so far, as granted by the Legislature. *Truckee, etc., Road Co.* v. *Campbell*, 44 Cal. 89; *California* v. *Cent. Pac. R. Co.*, 127 U. S. 1, 32 L. ed. at page 157, 8 Sup. Ct. 1073; *Covington & Lexington Turnpike Co.* v. *Sanford*, 164 U. S. 578, 41 L. ed. 566,

17 Sup. Ct. 198. It cannot be enlarged by "equivocal or doubtful provisions or probable inferences:" *Rockland Water Co.* v. *Camden & R. Water Co.,* 80 Me. 544, 15 Atl. 785, 1 L. R. A. 388.

It is sometimes asserted by courts of the highest authority that in grants by the public nothing passes by implication. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 24 L. ed. 773; *Oregon Ry. & Nav. Co.* v. *Oregonian Ry. Co.,* 130 U. S. 1, 32 L. ed. 837. But in such cases the rule is somewhat overstated. It is more accurate to say, as Chief Justice Marshall did, that nothing passes except what is granted, either in express terms or by necessary implication. *Indianapolis, etc., R. Co.* v. *Citizens' St. R. Co.* (Ind.), 127 Ind. 369, 24 N. E. 1054, 26 N. E. 893, 8 L. R. A. 539; *Mayor, etc.* v. *Railroad Co.,* 26 Pa. 355; *Birmingham, etc., R. Co.* v. *Birmingham, etc., R. Co.,* 79 Ala. 465, 58 Am. Rep. 615; *Thorp* v. *Rut. & Ben. R. Co.,* 27 Vt. 140, 62 Am. Dec. 625; *Swanton* v. *Highgate,* 81 Vt. at page 158, 69 Atl. 667, 16 L. R. A. (N. S.) 867.

The rule governing the construction of such grants is thus stated in the cases: "Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms or by an implication equally clear. The affirmative must be shown. Silence is negation, and doubt is fatal to the claim. This doctrine is vital to the public welfare." *Northwestern Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659, 24 L. ed. 1036. "Nothing passes but what is granted in clear and explicit terms. * * * * * Whatever is not unequivocally granted in such acts is taken to have been withheld." *Holyoke Water Power Co.* v. *Lyman,* 15 Wall. 500, 21 L. ed. 133; *People* v. *Newton,* 112 N. Y. 396, 19 N. E. 831, 3 L. R. A. 174.

"The powers of corporations organized under legislative statutes are such, and such only, as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others." *Thomas* v. *West Jersey R. Co.,* 101 U. S. 71, 25 L. ed. 950; *Cent. Transp. Co.* v. *Pullman Palace Car Co.,* 139 U. S. 24, 35 L. ed. 55, 11 Sup. Ct. 478; *State* v. *Clement Nat. Bank* 84 Vt. at page 197, 78 Atl. 944, Ann. Cas. 1912 D, 22.

So far there is no difficulty. These fundamentals are recognized and approved by this Court in the cases herein cited. Whatever of doubt there is in the case before us arises when we attempt to apply the rule to the facts shown by the record.

Much of the learning on this subject of tolls is to be found in the canal cases, and since there is a real and obvious analogy between toll roads and canals—both being public highways, and both exacting tolls for a privilege enjoyed rather than for a service rendered—those cases are directly in point here.

*Stowbridge Canal* v. *Wheeley,* 22 E. C. L. 333, is a leading case. It was held therein that the proprietors of the canal derived their right to exact toll wholly from their charter; that any ambiguity in its terms was to be construed against them; that they could claim nothing not clearly given to them thereby; and that, inasmuch as the charter only gave them the right to take tolls for what passed through their locks, the large quantities of coal and other goods carried by the defendant along the upper level of the canal, were not subject to toll. "The company," said Lord Chief Justice Tenterden, "are entitled to impose on burden on the public for their own benefit except that which is clearly given by the act (charter)."

*Perrine* v. *Chesapeake & Del. Canal Co.,* 9 How. 172, 13 L. ed. 92, is another leading case. Chief Justice Taney therein reaffirms the rule of the Dartmouth College Case above recited, and holds that inasmuch as the defendant's charter enumerated the articles upon which it was authorized to take toll, and this enumeration did not include passengers, or vessels on account of passengers on board, no toll could lawfully be taken from the plaintiff on account of them. The full significance of this holding appears only when it is stated that the plaintiff had established and was to operate a regular line of passenger boats from one port to another through the defendant's canal.

In *Sturgeon Bay, etc., Harbor Co.* v. *Leatham,* 164 Ill. 239, 45 N. E. 422, the only question involved was the right of the plaintiff to charge tolls on tugs used only for towing purposes. Its charter confers the right "to regulate tolls and charges upon all boats * * * used for the transportation of freight and passengers." It was held that this provision did not authorize the exaction of tolls for the passage of a tug through the canal, since it was not a boat used for the transportation of freight or passengers. The court said that the plaintiff could claim nothing

which is not clearly given by its charter, and "if one construction of a provision in the act, which grants the privilege of exacting tolls under certain conditions or with certain limitations is in favor of the company and against the public, and another construction is in favor of the public and against the company, the latter will prevail."

*Gloucester & Salem Turnpike Co.* v. *Leppee,* 62 N. J. Law 92, 40 Atl. 681, 41 L. R. A. 457, involved the right of the plaintiff to charge toll for a bicycle ridden over its road. There, as here, the schedule of rates included in the charter referred only to carriages drawn by beasts. In denying the right of the company to the toll claimed, the court said that the plaintiff's right to collect toll was wholly dependent upon the authority conferred by its charter; that while a bicycle was a carriage, carriages were not *per se* subject to toll, but only so when drawn by one or more beasts; and that a bicycle did not come within this description any more than a wheelbarrow pushed by a man or a perambulator pushed by a nursemaid. And to the same effect is *String* v. *Camden, etc., Co.,* 57 N. J. Eq. 227, 40 Atl. 774.

The very question before us was presented in *Mallory* v. *Saratoga Lake Bridge Co.,* 104 N. Y. Supp. 1025, and it was held that, under a charter authorizing the defendant to demand tolls not exceeding certain specified rates, one of which was for a "wagon, cart or other carriage drawn by two horses," an automobile was not subject to toll.

*Centre Turnpike Co.* v. *Vandusen,* 10 Vt. 197, is in harmony with the foregoing cases. It was an action to recover a penalty for evading toll on the plaintiff's road. The charter of the company provided that a person who, with intent to evade payment of toll, left the road to pass a gate and again entered thereon, should incur a certain penalty. The defendant traveled the turnpike from Hancock to a point a few rods east of the toll gate in Ripton. There he left the turnpike and passed on over an open highway, and did not again enter the plaintiff's road. Upon these facts it was held that the plaintiff could only demand toll at the gate; that no matter how far or how often a person traveled the turnpike, he could not be held for tolls unless he passed the gate; and that the defendant, not having passed the gate, and not having reentered the turnpike, was not subject to the penalty, though his purpose was to evade toll. Regarding the proper construction of the charter, the court said: "It must be con-

strued so as to give effect to this intention of the Legislature, but cannot be extended to a case unforeseen and unprovided for, and which, if it had been foreseen, it is, at least, doubtful whether any legislative provisions would have been made to prevent.''

Nor can the charter before us be thus extended. The Legislature failed to provide for the unforeseen condition which has arisen. That this condition was unforeseen does not admit of doubt. It must be remembered that we are now dealing with a situation existing more than a hundred years ago. Steam as a means of transportation was yet in the experimental stage; petroleum products were unknown; railroads were unprojected in the state, and none were chartered until years afterwards; canals were expected to furnish the principal means of heavy transportation. To say that the Legislature of 1814 foresaw the advent of the automobile or any other mechanical carriage, and intended to provide for it in this charter would be to ascribe to its members a prophetic vision that even those wise and far seeing men could not possess. If they had, it is fair to assume that they would have added a general clause to the charter to manifest their purpose.

The company places much reliance upon the Pennsylvania cases. It is held in that state that a corporation authorized to engage in a business, as a necessary incident to that authority, has the rights ordinarily belonging to such business, and that compensation for services is inseparable from the right. *Boyle* v. *Phil. & R. R. Co.*, 54 Pa. 310. In *Geiger* v. *Perkiomen & Reading Turnpike Road*, 167 Pa. 582, 31 Atl. 918, 28 L. R. A. 458, the question whether a bicycle was subject to toll was presented. In holding that it was, the court said that the method of computing tolls upon carriages by wheels and horses, as provided in the defendant's charter, was not the power to collect toll, but only a limitation of the amount chargeable.

With this conclusion we cannot agree. It cannot be sustained on principle or authority. It is condemned in *Murfin* v. *Detroit & Erin Plk. R. Co.*, 113 Mich. 675, 71 N. W. 1108, 38 L. R. A. 198, 67 Am. St. Rep. 489, in which case it was held that a bicycle was not tollable under a charter authorizing a toll on a ''vehicle drawn by one or more animals.'' True it is that it is suggested in the opinion in this case that a motorcycle or automobile would be subject to toll, but this is wholly *obiter*.

The taking of tolls for automobiles is beyond the charter

rights of this corporation; and on the record before us, we cannot say that it has any prescriptive rights to do this under the rule suggested by Judge Redfield in *Panton Turnpike Co.* v. *Bishop,* 11 Vt. at page 202, or that the right has been asserted for such a time and under such circumstances as to amount to a practical construction of the franchise under the rule of *Old Colony Trust Co.* v. *Omaha,* 230 U. S. 100, 57 L. ed. 1410, 33 Sup. Ct. 967 if that doctrine applies in this jurisdiction; for all that is shown by the report is that "the toll collected from each automobile is fifty cents."

It was suggested in argument that a new time for the removal of buildings, wood and timber, ought to be fixed, regardless of what the result here might be.   But P. S. 3935, as amended by No. 264, Acts of 1912, provides that the real estate, easement or franchise of a turnpike company shall not be taken by condemnation, unless the whole thereof is taken and compensated for.   The report of the commissioners shows that they had this provision in mind and fixed their valuations accordingly. And the judgment below expressly states that "the whole of said turnpike road and the real estate, easements and franchises of said turnpike road" in the towns of Peru and Winhall, are taken, and the damages reassessed accordingly.   The further provision limiting the time for the removal of buildings, fences, wood and timber, was unwarranted.

*Judgments reversed, and judgments for the petitioner for the smaller of the alternative sums shown by the respective reports, with interest thereon from October 12, 1916,   Let the petitionees recover costs in this Court.*