Sullivan,
June 3, 1919.

THE PROPRIETORS OF THE CORNISH BRIDGE *v.* FRED A. FITTS.

A state may authorize a toll to be charged by a bridge corporation for interstate travel thereon in the absence of any legislation by congress upon the subject.

A state may confer upon a corporation owning property and doing business therein the same powers as regards such property and business as are granted by its charter in another state without thereby subjecting the corporation to the laws relating to foreign corporations.

If by a charter to a bridge corporation it is intended that all travel passing thereon shall contribute in tolls for its support, the charter though granted before self-propelled vehicles were known, confers authority, when such new modes of travel come into vogue, to collect tolls therefor on a basis commensurate with the established rates.

A passenger automobile is "a four wheeled carriage for passengers" within the meaning of the charter of the Cornish Bridge granted in 1795–1796; and if used for carrying freight a toll equal to that fixed by the charter for a carriage drawn by two horses is not in excess of the charter power.

Where an adjacent state granted to a bridge corporation incorporated in this state the right to charge the same rates of toll granted by the laws of this state, the extent of the grant is here determinable as a question of New Hampshire law.

A charter is to be construed according to its intent; all is not to be taken against the grantee that is not specifically granted; and the principle that what is within the spirit of an act is within its terms is applied to charters as well as to other legislation.

A charter provision for a revision by the court of the tolls of a bridge corporation

. is superseded by the statute of public utilities, Laws 1911, *c.* 164, and the tolls
are to be fixed by the public service commission.

If no order of the public service commission requires a sworn statement of rates, a
schedule filed with the commission without oath is a compliance with the
statute.

Directors may authorize an officer of the corporation to act in a specific matter
unless such authorization is contrary to the charter or by-laws; his action
after actual or constructive notice is binding upon them.

The authority of a general officer of a corporation may be inferred from its direc-
tors' acquiescence in or knowledge of his acts.

ASSUMPSIT,. for tolls.   Trial by a referee, who found a verdict
for the plaintiff and reported the facts.   Transferred without ruling
from the November term, 1918, of the superior court by *Marble*, J.

The plaintiff was incorporated by the New Hampshire legislature
in 1795 to construct a toll bridge between Cornish, N. H. and Windsor,.
Vt. and to collect certain tolls (as amended in 1796) as follows:

"For every foot passenger two Cents for every horse and rider six
Cents and a quarter — for each horse and Chaise Chair or Sulkey
twelve and one half Cents for each Sleigh drawn by one beast eight
Cents for each Sleigh drawn by more than one beast twelve and a
half Cents for each Coach Phaeton Chariot or other four wheeled
Carriage for passengers thirty Cents for each Curricle twenty five
Cents for each Cart or other wheel Carriage of burden drawn by one
beast eight Cents for each Cart or other wheel Carriage of burden
drawn by two beasts fifteen Cents for each Cart or other wheel
Carriage drawn by three Beasts twenty Cents for each Cart or other
wheel Carriage of burden drawn by four beasts twenty five Cents —
for every additional beast above four four Cents for each Sled drawn
by one beast five Cents for each Sled drawn by two beasts ten Cents.
for each Sled drawn by three beasts fifteen Cents and for each Sled
drawn by four beasts twenty Cents and for every additional beast,
above four four Cents for each horse Jack or mule exclusive of those
rode on three Cents — for each Neat Creature not belonging to a.
team two Cents for each sheep or Swine half a Cent

And be it further Enacted that the forgoing Rates of Toll shall at
the end of every five Years from the time of first passing over Said
Bridge be under the Controul of the Justices of the superior Court and
it shall be the duty of the proprietors to exhibit to the Said Justices
of the Superior Court a true account of their Annual income and
expenditures to that time under forfeiture of the priveledges granted
by this Act and the Said Justices are hereby authorized to take
Cognizance of the same and make such alterations in the Said Rates

of Toll so that the nett annual income of Said Bridge Shall at no time after exceed twelve per Centum per Annum —"   (6 N. H. Laws, 353).

In 1797, the legislature of Vermont passed an act "confirming" the rights of the grantees, of which it enumerated the more important, and granting "the same rates of toll which are granted to them, by the acts of the legislature of the state of New Hampshire, relating to said bridge or bridges."   Vermont Laws 1797 (Oct. Sess.), 66.

The incorporators organized and have since held annual meetings, sometimes in New Hampshire and sometimes in Vermont.   They have operated the bridge, and from time to time filed the required accounts in court.

In 1915 one Wardner, treasurer of the company, consulted the directors individually as to a schedule to be filed with the public service commission.   They determined to have this done and delegated the duty to him.   Accordingly he prepared and filed one which includes a toll of fifteen cents for each automobile.   This schedule was posted at the bridge and has been acted upon since that time.

The defendant used the bridge as charged in the specification, the travel being largely by automobile, and some of it for freight carrying only.

The defendant claimed that the plaintiff was a foreign corporation in Vermont, and offered to prove that under the law of that state its contracts made there were invalid.   He also offered proof that by the law of that state a charter like the plaintiff's gave no right to collect toll for travel by automobile.   Other matters alleged in defence are stated in the opinion.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. Jonathan Piper* orally), for the plaintiff.

*Davis & Davis* (of Vermont) and *Frank O. Chellis* (*Messrs. Davis & Davis* orally), for the defendant.

PEASLEE, J.   The defendant claims that for sundry reasons the plaintiff is not entitled to collect from him for his use of its property. It is urged that because this was interstate traffic the state had no power in the premises.   But the law is that in this class of cases "the States may act within their respective jurisdictions until Congress sees fit to act."   *Port Richmond &c. Ferry Co. v. County*, 234 U. S. 317.

Next it is said that the "charter provides that passage shall be free unless an obstruction is maintained." No such provision has been found in the charter.

Authority from the state of Vermont to act in the premises is said to be lacking. The original charter was granted by the New Hampshire legislature in 1795 (6 N. H. Laws, 230) and twice amended in 1796 ((*Ib.* 328, 353). In 1797 the Vermont legislature passed an act "confirming" the proprietors in their rights. The evident purpose of the act was to make the existing corporation competent to act in that capacity in Vermont. It did not create a second corporation, but gave the New Hampshire corporation a legal existence and domicile in Vermont. This is frequently done in the case of railroads, and the power to so endow the company is well settled. "Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, *quoad hoc* any property within its territorial jurisdiction." *Baltimore & Ohio Railroad Co.,* v. *Harris,* 12 Wall. 65, 83. And what is true as to the corporate property is of course equally true as to corporate business.

The claim that the plaintiff is, in Vermont, a foreign corporation is not borne out by the facts. The incorporators organized and have held meetings sometimes in New Hampshire and sometimes in Vermont. Their action in so treating their organization as a corporation in both states may or may not be justified under the powers granted. But whether it is or not is immaterial on this question. So long as the plaintiff was a corporation at all it was a Vermont corporation as to its property and business in that state. If it could be held that an irregular method of holding meetings had deprived it of its corporate character and existence, then it was no longer a corporation, and hence was not a foreign corporation. The Vermont legislature made the plaintiff a Vermont corporation, so far as it is a corporation in that state at all. It follows that the statutes of Vermont relating to foreign corporations have no application.

The Vermont act provides that the plaintiff be granted "the same rates of toll which are granted to them, by the acts of the legislature of the state of New Hampshire, relating to said bridge." If the tolls sued for were authorized by New Hampshire they were also authorized by Vermont. The grant of tolls was made before self-propelled vehicles were known, and hence it is argued that no toll can be charged for their passage. It is manifest that the legislature intended that all travel passing over the bridge should contribute to its support. If the present day development of means of travel were

outside the purview of the act, it should be held to be equally outside the intent of the proprietors. That is, their act in establishing the bridge, though a dedication of the structure to public travel as then known, would not be a dedication of it to unknown future modes of travel, as to which there was no grant of a toll, and which no one had in contemplation. In such a case, there being no public duty and no grant of a toll, the owner could collect according to special contract, or a reasonable sum if no amount were agreed upon. *Olcott* v. *Banfill,* 4 N. H. 537, 547.

But the true construction of the act is that when new modes of travel come into vogue, and it is evident that the legislative grant was intended to cover all travel, there is authority to collect therefor on a basis commensurate with the established rates. *Geiger* v. *Turnpike Road,* 167 Pa. St. 582; *Murfin* v. *Company,* 113 Mich. 675. A different conclusion was reached in *Peru Turnpike Co.* v. *Peru,* 91 Vt. 295. In that case reliance is placed upon *Gloucester &c. Turnpike Co.* v. *Leppe,* 62 N. J. Law 92; *Murfin* v. *Company, supra,* and a decision by an inferior court in New York (*Mallory* v. *Bridge Company,* 104 N. Y. Supp. 1025). It is not apparent how support for the decision is to be found in *Murfin* v. *Company, supra.* The decision there was that the company could not collect from a bicycle rider, because the charter permitted foot travelers to pass free, and the bicycle rider was thought to be more properly classified with them than with riders in wheeled vehicles. But the opinion states in terms that automobiles and motorcycles are subject to the payment of toll. The cases from New Jersey and New York are founded upon the theory that the grant is to be strictly construed against the company, and it is in reliance upon this idea that they were followed in Vermont.

In this state the rule of construction relied upon is not treated as a controlling one in most instances. The rule here is that the construction of a grant, like the interpretation of any writing, is to be arrived at by ascertaining the fair meaning of the language to those who used it. The rule of taking a grant of a franchise strongly against the grantee is not here magnified so as to deprive him of everything save what is within the strict letter of the grant. The principle that what is within the spirit of an act is within its terms is applied to charters as well as to other legislation. *Burke* v. *Railroad,* 61 N. H. 160, 233.

So far as passenger automobiles are concerned the act clearly covers the situation. Such a vehicle is a "four wheeled carriage for passengers." As to freight vehicles, or "carriage[s] of burden," the fact that they are or are not "drawan by two beasts" is not the true

test of liability to pay a toll. *Murfin* v. *Company, supra.* The number of beasts is used as a convenient measure for the amount of the toll. A vehicle drawn by four beasts paid more toll than one drawn by two beasts because it would be heavier. A charge for the passage of an automobile equal to that fixed for a carriage drawn by two horses is plainly not in excess of that granted. The right to charge it is within the spirit of the grant and is conferred thereby.

The argument that because the traffic in question arose in Vermont, therefore the case is controlled by *Peru Turnpike Co.* v. *Peru, supra,* is based upon a misconception of the situation. The Vermont grant is of "the same rates of toll which are granted to them by the acts of the legislature of the state of New Hampshire." Vermont granted whatever New Hampshire had granted; and the extent of the New Hampshire grant is here determinable as a question of New Hampshire law. Even if Vermont would not be bound to follow the New Hampshire construction of the New Hampshire grant in litigation in Vermont, the result would not be affected. Upon the same principle New Hampshire would not be compelled to follow the Vermont view of the extent of a Vermont grant in litigation in New Hampshire. Much less is the Vermont view authority here on the construction to be placed upon a New Hampshire grant. In any aspect of the situation, the extent of the grant is to be settled in this suit as a question of New Hampshire law.

Finally it is said that the rates were never legally promulgated. The charter provision for a revision by the court was superseded by the act establishing the public service commission. Laws 1911, c. 164. A schedule of rates was thereafter filed with the commission, and to it the defendant makes objection. The schedule was not sworn to; but as an oath is prescribed only in such manner as may be required by the commission (*Ib. s.* 8 (a) ) and as the commission's order (No. 15) does not call for an oath, this objection is untenable.

The schedule was prepared and filed by the treasurer of the company, after informal consultation with the directors, who delegated the task to him. ". . . it is competent for the general agents, who have charge of the business of transportation, to establish rates of freight, though of course subject to the control of the directors, if they choose to act upon the matter; . . . as in other cases, the assent of the directors may be presumed unless there is some evidence of dissent. The rates relied on in this case, then, being shown to have

been posted up at their depots, and acted upon during the period of these transactions without question or objection, may well be taken to have been legally established." *Manchester & Lawrence Railroad* v. *Fisk*, 33 N. H. 297, 308.

Other exceptions taken by the defendant have not been argued and are assumed to be waived.

*Judgment for the plaintiff.*

All concurred.