STATE OF CONNECTICUT *v.* REGINALD HUNTINGTON

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, JS.

Argued May 9—decided July 1, 1958

*Richard F. Corkey,* with whom was *Arthur Barrows,* for the appellant (defendant).

*Edward C. Hamill,* prosecuting attorney, with whom was *Orrin Carashick,* for the appellee (state).

DALY, C. J. The defendant was tried upon an information charging him with the crime of having two or more signs on premises occupied by him in the town of East Lyme on May 21, 1956, in violation of the zoning regulations of the town as amended. He was found guilty and appealed to this court.

The court found the following facts: In August, 1951, the defendant, a real estate agent, commenced the construction of a dwelling house in a residence zone. Since April, 1952, when the dwelling was completed, he has lived in the house and maintained a real estate office on the premises. In May, 1952, he erected two signs on the property, each of which was in excess of two square feet in size and contained words in addition to his name and occupation. On November 5, 1945, proposed zoning regulations had been adopted by the zoning commission. On November 6, 1945, the regulations were published with the provision that they were to become effective immediately. Under the regulations all of the town, except four specially chartered areas not involved in this action, was divided into three districts.[1] The regulations permitted, within a residence district, "the office of a physician, dentist, or other member of a recognized profession, when located in the dwelling used by such person as a private residence," providing there was no display visible from the outside except for an announcement card or sign of not more than two square feet. The regula-

[1] "Districts. Residence Districts: All the zoned area of the Town except the Business Districts and the Industrial Districts. Business Districts: Any lot in the zoned area of the Town now used for business purposes. Industrial Districts: Any lot in the zoned area of the Town now used for industrial purposes."

tions constituted a comprehensive plan of zoning for the town. Commencing in December, 1945, they were amended from time to time.

On May 4, 1954, revised zoning regulations were validly adopted. They permitted, in a residence district, "[s]igns not over two square feet in area bearing the name and occupation of the occupant of the premises." East Lyme Zoning Regs., § 4.2.10 (1954). By these regulations the entire town was divided into residence districts R-1, R-2 and R-3; rural districts RU-1 and RU-2; summer colony business, or SC-B, districts; commercial districts CA-1 and CB-1; and light industrial, or LI-1, districts. Id., § 1.1. The boundaries of these districts were established "as shown on the Building Zone Map of the Town of East Lyme, dated April 5, 1954, and amendments thereto, which map and amendments are hereby declared to be a part of these regulations." Id., § 1.2. In residence districts R-1, R-2 and R-3, customary home occupations, including "the office of a . . . real estate or insurance broker," and signs "not over two square feet in area bearing the name and occupation of the occupant" were permitted. Id., §§ 4.1.2, 4.2.2, 4.2.10. By an amendment adopted in May, 1956, "[o]ne sign not over two square feet in area bearing the name and occupation of the occupant of the premises" was permitted in residence districts. There was no substantial change in the size, number and lettering of the signs on the defendant's premises between 1952 and May 21, 1956.

The court concluded that the zoning regulations adopted in 1945 were in accordance with law and were valid regulations and that the two signs erected by the defendant on his premises in 1952 were in violation of those regulations and were also in violation

"of the zoning regulations as amended on May 4, 1954, and May 7, 1956."

The defendant maintains that the zoning regulations purportedly adopted in 1945 made no division into districts and did not constitute a comprehensive plan as required by § 424 of the 1930 Revision of the General Statutes,[2] then in effect (cf. Nov. 1955 Sup., § N10), and consequently were not valid regulations. By the provisions of § 424, the zoning authority of the town was permitted to "divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes" of zoning. The ultimate object of zoning regulations is to confine certain classes of buildings and uses to designated localities or districts. *Darien* v. *Webb,* 115 Conn. 581, 585, 162 A. 690. The zoning commission was subject to the limitations prescribed by law. The power to zone was not absolute but was conditioned upon an adherence to the statutory purposes to be served. The statute went beyond the provision for

---

[2] "[Rev. 1930] Sec. 424. REGULATIONS. Such zoning authority may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings or structures throughout each district, but the regulations in one district may differ from those in another district. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

the division of the municipality or a part of it into districts. It required that "regulations shall be made in accordance with a comprehensive plan." The goal of this requirement is to avoid an arbitrary, unreasonable or discriminatory exercise of the zoning power.

"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties." *Miller* v. *Town Planning Commission,* 142 Conn. 265, 269, 113 A.2d 504. The districts must be described with reasonable certainty and must have definite boundaries so that the regulations may be practically applied. The district lines and boundaries must be fixed by the regulations and not by administrative officials or courts. In other words, the fixing of boundary lines between districts is a legislative function. 8 McQuillin, Municipal Corporations (3d Ed. Rev.) §§ 25.89, 25.90. In the present case, the regulations purportedly adopted in 1945 did not divide the municipality or a part of it into districts and were not made in accordance with a comprehensive plan. We have held that a comprehensive plan may be found in the scheme of the zoning regulations themselves. *Miller* v. *Town Planning Commission,* supra; *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173. However, the attempt of the 1945 ordinance to create districts by adopting the uses to which the land was then being put, without any other description of zone boundaries and without regard to considerations other than actual current uses, shows an utter lack of any plan for the orderly development of land uses in the town and renders the regulations pertaining to the uses in the

purported districts meaningless. *Gold* v. *Durham,* 16 Conn. Sup. 420, 423. Consequently, the 1945 regulations were not valid. No zoning regulations were, therefore, adopted prior to May, 1954.

The defendant contends that at the time zoning regulations were adopted in May, 1954, the signs then upon his premises constituted a nonconforming use. He asserts that they continued to constitute such a use thereafter and that, consequently, he did not violate the zoning regulations on May 21, 1956. In the zoning regulations adopted in May, 1954, a nonconforming use is defined as a "use of land, building or premises which is not a use permitted by the provisions of these regulations for the district in which such land, building or premises is situated." § 3.16. A nonconforming building is defined as a "building which does not conform to all the applicable provisions of these regulations." § 3.17. In a section entitled "Non-Conforming Buildings and Uses," it is provided that "[a]ny non-conforming use of buildings lawfully existing at the time of the adoption of these regulations or of any amendments thereto, may be continued"; that "[n]o non-conforming use may be changed except to a conforming use"; that "[n]o non-conforming use, shall, if once changed into a conforming use, be changed back again into a non-conforming use"; that "[n]o non-conforming use shall be extended or expanded"; and that "[n]o non-conforming use which has been abandoned for a period of one year shall be thereafter resumed." §§ 12.1-12.1.4. Although the regulations do not expressly permit the continuance of a nonconforming use of premises, as distinguished from buildings, lawfully existing at the time of the adoption of the regulations or of any amendment to them, they do so by implication. *Salerni* v. *Scheuy,* 140 Conn. 566,

569, 102 A.2d 528. It follows that on May 21, 1956, the signs on the premises of the defendant constituted a nonconforming use and that he did not violate the zoning regulations. Because of this holding, we have no occasion to discuss the defendant's remaining assignments of error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty.

In this opinion the other judges concurred.