## National Advertising Company v. Harry H. Cooley, Secretary of State, et al.

[ 227 A.2d 406 ]

December Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 27, 1967

*McKee & Clewley* for plaintiff.

*Albert Pingree,* Assistant Attorney General, for Secretary of State and Attorney General.

*Williams & Witten,* for Town of Shaftsbury.

**Barney, J.** In March, 1965, the plaintiff company sought to erect billboards in the town of Shaftsbury. The Secretary of State, as 9 V.S.A. §3628 then required, refused to issue the necessary permits, because the proposed signs were in conflict with a billboard zoning ordinance of the town of Shaftsbury, on file in his office. (Effective in July, 1965, the prohibition was transferred to 9 V.S.A. §3626, which was amended to require written permission from the appropriate local official as a prerequisite to the granting of a permit.) The company sought relief from this prohibition by bringing this declaratory judgment proceeding to challenge the existence and validity of the ordinance. The lower court heard the matter on an agreed statement of facts, and dismissed the petition. The plaintiff brought the matter here.

In March, 1951, Shaftsbury adopted an ordinance regulating outdoor advertising. The regularity of its adoption is not questioned in this action, which necessarily includes the requisite preliminary hearing, posting, publication and adoption at town meeting of the pro-

posed ordinance as provided in 24 V.S.A. §3003 and 3011. In accordance with law, a certified copy was duly and timely filed in the Secretary of State's office. In 1952, the selectmen, as they are empowered to do, adopted an amendment to this ordinance and properly filed a copy of the amendment with the Secretary of State.

In 1953, the following article appeared on the warning for the annual meeting.

> To vote by ballot on the following: Will the Town repeal the ordinance regulating outdoor advertising structures which was voted at the 1951 town meeting?

The vote was heavily in the affirmative. The result of the vote was also certified to the Secretary of State. No public hearings were held in connection with this article, either before or after the town meeting. At no time has the board of selectmen taken any action in their legislative capacity to repeal the billboard ordinance. In 1961, and again in 1964, the board adopted amendments to this ordinance and filed them with the Secretary of State. On this state of facts the Secretary of State refused the billboard permits.

The plaintiff raises two issues. First, it contends that the Shaftsbury ordinance has been repealed by popular vote. Second, it claims that the ordinance, even if still in force, is invalid because it is not comprehensive, since it regulates only outdoor advertising in the town.

A procedure for repeal of a zoning ordinance by a town is now set out in 24 V.S.A. §3027, requiring a favorable vote of two-thirds of the qualified voters present at a duly warned town meeting. It was not part of the law in 1953. In this case we are not engaged in a search for the appropriate or best procedure for repeal in 1953, our concern is only whether the action of the town meeting was sufficient then to repeal the ordinance. The answer to this question can be found by determining whether, under the statutes then in force, authorization to accomplish repeal, by that means alone, had been assigned to the townspeople in town meeting.

The plaintiff analogizes the power of a town meeting to a right of initiative or referendum. Local governments in this state have no such inherent or constitutionally-granted authority. The power to zone is a grant from the legislature. The municipality, there-

fore, has zoning authority only in accordance with, and subject to, the terms and conditions imposed by the state in making the power grant. *Thompson* v. *Smith,* 119 Vt. 488, 498, 129 A.2d 638. The townspeople have no independent power to exercise any authority in connection with the granted power not encompassed by the legislative enactments.

The statutes involved do not give the voters any direct power to zone, or to repeal zoning. The legislative grant was restricted. It permitted the voters to grant or withhold from the legislative body of the town, in this case the selectmen, the authority to make zoning regulations. 24 V.S.A. §3002, *Thompson* v. *Smith, supra,* 119 Vt. 488, 500. If granted, the voters, in town meeting, had the further right to approve or disapprove the proposed original zoning ordinance. 24 V.S.A. §3003. Once that ordinance took effect, the selectmen had the power to amend, alter or add to the ordinance without the approval of the voters, although they were allowed to solicit any advisory. vote, if they chose. 24 V.S.A. §3004.

Both the original ordinance and all later changes had to be brought to public hearing, with notice to parties in interest and local citizens, before the ordinance or change could become effective. 24 V.S.A. §3011. The only statute then in effect which mentions "repeal" was 24 V.S.A. §3012. It required a two-thirds vote of the selectmen to amend, repeal or alter zoning regulations, restrictions, or the boundaries of zoning districts, if protests from affected and adjacent landowners reached a certain level.

From this statutory pattern a policy clearly emerges to require participation, at least, of the legislative body of the municipality in any alteration or repeal of zoning regulations, as the law stood in 1953. Preliminary public hearings were also a prerequisite. They are lacking in this case.

Nor can it be argued that any inherent power to repeal necessarily resides in the town, merely because it enacted zoning. In other areas the legislature has delegated the power to municipal voters to embrace a governing plan, without giving any authority to disengage. For example, this was true of entrance to the village form of government, up to the passage of No. 184 of the Acts of 1965. Until that time, the legislature kept to itself the power to determine, in individual cases, the manner by which villages might give up this form of government.

■ The action of the voters of Shaftsbury at town meeting in 1953 was not effective to repeal the existing zoning ordinance. The Secretary of State and the lower court were correct in treating the ordinance as presently in force.

In 24 V.S.A. §3009, the legislature has said, "Such regulations shall be made in accordance with a comprehensive plan . . . ." Since the Shaftsbury ordinance deals only with billboards, the plaintiff argues that it is fatally lacking in comprehensiveness. It points to the provisions of 24 V.S.A. §3002, which then, and now, authorized the regulation of, "the size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes." The contention is that a comprehensive ordinance must deal with these areas, and, if it confines itself to one type of structure, it is discriminatory.

■ Statutes are entitled to reasonable construction. *Herbert* v. *Layman and Braun,* 125 Vt. 481, 486, 218 A.2d 706. This zoning statute is intended to reach communities ranging in size and complexity from larger than Bennington to smaller than Brunswick. The meaning assigned to "comprehensive" must not produce ridiculous results at either extreme. In same small towns building size, lot size, population density, trade or business use or location, or some of these, may require no attention now, or in the foreseeable future. Yet, in many of these small communities, billboards may represent the only significant threat to "conserving the value of property and encouraging the most appropriate use of land throughout the municipality" in accordance with 24 V.S.A. §3009. The position of the plaintiff, if it requires any municipality seeking to regulate against threatening conditions, to enact unnecessary and unsupportable regulations in other areas, is unacceptable.

■ Unquestionably, a discriminatory ordinance would be invalid, on due process grounds, if no other. But the fact that the zoning regulation in this case is restricted to billboard structures does not, per se, make it discriminatory. Outdoor advertising is one of those activities of sufficient separate public concern to be the subject of special legislation and regulation. *Kelbro, Inc.* v. *Myrick,* 113 Vt.

64, 70, 30 A.2d 527. The very licensing requirements generating this action are evidence of this. 9 V.S.A. §3621-3687. Discrimination, in this case, must amount to an unfair or prejudicial exercise of the right to regulate outdoor advertising structures, devices and displays, specifically and specially referred to in 24 V.S.A. §3001.

The word "comprehensive" became part of our statutory law when the original zoning enabling act was adopted as No. 55 of the Acts of 1931. That act copied verbatim most of the language of the Standard State Zoning Act of the Department of Commerce. See Rathkopf, *Zoning and Planning,* 547-51 (2nd ed. 1949). The only significant textual adjustments were made to accommodate the operational aspects to our town government requirements. Many other states adopted the same standard enabling act.

The meaning ascribed to "comprehensive" by the original authors of this enabling act was undoubtedly different from the intention and understanding attached thereto by the enacting legislatures. We have already pointed out the unreasonableness of requiring full-scale zoning in some of our rural communities. The legislature must have been aware of this. However desirable in theory the coupling of zoning to a master plan may be, certainly it must be said to have been obvious to the legislature that master plans for some of our towns would be, for a long time to come, economically wasteful and physically unnecessary. Yet, certainly, such towns should not be required to forego so much of zoning as might be appropriate to their situation. Thus, the aim of the theorist, with his primary concern with urban conditions, cannot be taken as the aim of a legislature dealing with a predominately rural state.

Because of this second-hand derivation, this word "comprehensive" has given many courts trouble. See Haar, *"In Accordance with a Comprehensive Plan,"* 68 Harv. L. Rev. 1134, 1157 (1955). As that article indicates, courts have been reluctant to find an invalidating test in lack of "comprehensiveness" unless other invidious characteristics, such as arbitrariness, capriciousness or discrimination could be found to be present. Unquestionably, the term is directed against, among other things, improper and unfair spot zoning practices, and directed toward proper consideration of the probable long-term developments and objectives with respect to overall land use in the community.

A municipality cannot dispense with concern for the health, safety or general welfare of the community, or avoid a consideration of the issue of overall land use in the area, in deciding the appropriate and suitable forms that its own zoning regulations ought to take. As a strict test of statutory validity, however, we also find that it does not become prohibitive until the failure to pursue the statutory objectives does amount to an unreasonable, arbitrary, capricious or discriminatory exercise of the power to zone. We do not find that the fact that the Shaftsbury ordinance was limited to the regulation of outdoor advertising structures subjects it to this condemnation.

■ Unquestionably, if the trial court felt dismissal was the required result in this case, it would have been better to have said why. See *Grow* v. *Wolcott,* 123 Vt. 490, 496, 194 A.2d 403. Otherwise, the parties were entitled to a declaration of the rights called into question, in accordance with the purposes of declaratory judgment actions. However, with the essential ingredients for a decision on the law already before us, in order to avoid useless protraction of the litigation to no different result, we make final disposition here.

*Judgment affirmed.*

**Holden, C.J.,** dissenting. From the outset, two deficiencies perplex proper appellate review of this proceeding for a declaratory judgment. The case was submitted for decision on an agreed statement of facts. The findings report only the stipulated facts and no more. These include conclusions of law predicated upon hypothetical suppositions of fact. The 1951 ordinance is incorporated in the findings as an exhibit. The text of the ordinance and its preamble are also subject to conflicting inferences of fact. Indeed, the declaratory relief announced in the majority opinion is based on inferences of law and fact which appear to me to be of doubtful validity.

The submission of a controversy on an agreed statement presupposes that all the essential facts necessary to the determination of the controversy have been stipulated. And while an agreed statement is construed against the appellant, we are bound to afford every part of the record a reasonable construction. And if a result contrary to that reached below is required, judgment should be entered accordingly. *Olan Mills, Inc.* v. *City of Barre,* 123 Vt. 478, 481, 194 A.2d 385.

In any event, neither this Court nor the court below can supply an essential fact which is omitted. *St. Albans Hospital* v. *City of St. Albans,* 107 Vt. 59, 62, 176 Atl. 302. And the action may be dismissed on the ground the facts agreed upon are insufficient to support the judgment sought by the plaintiff. *1165 Fifth Avenue Corp.* v. *Alger,* 288 N.Y. 67, 41 N.E. 2d 461, 3 Am. Jur. 2d Agreed Case §27; Annot. 97 A.L.R. 302.

Perhaps the trial court was so persuaded here for that was the action taken. The lower court has made no independent findings. Its judgment order states no declaration of rights. And we are left in the dark as to why the lower court dismissed the petition.

Despite these shortages, the majority has undertaken to settle this important controversy by making the declaration of rights which the trial court refused. Yet the order dismissing the action is affirmed. I would reverse and remand for adequate findings on essential facts so that a true declaratory judgment can be entered. This is accepted procedure in the face of the deficiencies which confront this proceeding. See Am. Jur. 2d, Agreed Case §26; Annot. 97 A.L.R., *supra,* 302.

Paragraph 6 of the complaint alleges that "an ordinance purporting to govern outdoor advertising was passed at a meeting of the voters in the Town of Shaftsbury on the 6th day of March, 1951—." The joint answers of the defendants deny the representation and allege affirmatively that the voters of the town authorized the selectmen "to prepare regulations with reference to outdoor advertising pursuant to Chapter 173 of the Vermont Statutes of 1947, that the selectmen prepared such regulations pursuant to said Chapter 173—" which was approved by the voters in 1951.

The agreed facts do not settle these issues. It is not even stated that a zoning ordinance was enacted—merely "an ordinance regulating outdoor advertising."

The declaratory adjudication made by the majority upholds the vote of the Town in 1951 with one hand. With the other, it strikes down the vote to repeal the action in 1953 on the strength of the assumption that the original vote enacted a true and valid zoning ordinance.

I believe there is more involved in this declaration than the contamination of our scenic landscape. The soundness and integrity of fundamental principles of municipal zoning are at stake.

That the control and regulation of outdoor advertising is a proper exercise of the police power of the State is not open to question. *Kelbro, Inc.* v. *Myrick,* 113 Vt. 64, 70, 30 A.2d 527. But municipal corporations are the creation of the Legislature. Towns within the State possess only those powers which are expressly granted, or clearly implied by delegation from the sovereign, through the Legislature. *State* v. *Page,* 112 Vt. 326, 331, 24 A.2d 346; *Whiting Co.* v. *City of Burlington,* 106 Vt. 446, 461, 175 Atl. 35; *New Haven* v. *Weston,* 87 Vt. 7, 13, 86 Atl. 996.

Of course, it can be fairly implied that the Legislature intended to empower the towns to regulate outdoor advertising if and when they adopt legally valid zoning ordinances. Such authority, by implication, is derived from the definition of "structures" contained in the Zoning Act which specifies the term "shall include all outdoor advertising structures, devices and displays." 24 V.S.A. §3001 (V.S. '47 §3847).

But to achieve zoning regulations which have legal force and effect, it was essential for the Town of Shaftsbury to comply with the procedural prerequisites which the Legislature made mandatory conditions to the delegation of the power to accomplish zoning. These include a vote by the town to undertake the zoning project. Upon such a vote, the selectmen were directed to appoint a zoning commission to prepare a preliminary plan, recommending "the boundaries of the various original districts and appropriate regulations to be enforced therein." This must be followed by public hearings prior to a final report to the selectmen. And the selectmen were enjoined from taking any action to enact zoning ordinances until they had received the final report of the zoning commission. V.S. '47 §3859.

The study and hearings by the zoning commission constitute the planning phase of municipal zoning. And until this procedural requirement had been completed, the selectmen, as the legislative body of the Town, were powerless to consider or propose zoning ordinances to the voters of the town for final approval. V.S. '47 §3849 (24 V.S.A. §3003, later amended by 1963, No. 166 §§2, 3 and 4). *Thompson* v. *Smith,* 119 Vt. 488, 500, 129 A.2d 638.

The agreed findings and the 1951 ordinance which they incorporate, fail to establish that the voters of the town ever authorized its selectmen to inaugurate a zoning project. The only preliminary vote taken was "to regulate and restrict outdoor advertising."

The text of the ordinance reports the selectmen proceeded to adopt the restrictions against advertising structures upon the vote of the 1950 town meeting alone, without the appointment of, or consideration at public hearings by a zoning commission. There is no mention of the planning procedure required by the statute.

In construing the limits of delegated power—"Silence is negation, and doubt is fatal to the claim. This doctrine is vital to the public welfare." *Peru Turnpike Co.* v. *Peru,* 91 Vt. 295, 299, 100 Atl. 679; *Whiting Co.* v. *City of Burlington, supra,* 106 Vt. at 461.

The ordinance itself makes no direct reference to zones or zoning. The Town of Shaftsbury is constituted as "one district" without mention of "zoning." It undertakes to restrict only outdoor advertising, without regard to location, throughout the full area of the township.

Our statute, as it did in 1951, requires:

> Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular use, and with a view to conserving the value of property and encouraging the most appropriate use of land throughout such municipality. 24 V.S.A. §3009; V.S. '47 §3855.

Thus the power to zone is not absolute. It is conditioned upon adherence to a comprehensive plan. The purpose of the requirement is to avoid arbitrary, unreasonable and capricious exercise of the zoning power. This is the inevitable product of a piecemeal approach to the problem. *Kozesnik* v. *Montgomery Township,* 24 N.J. 154, 131 A.2d 1, 7; *State* v. *Huntington,* 145 Conn. 394, 143 A.2d 444, 446; 8 McQuillin, Municipal Corporations, §25, 79 et seq. (1965 Rev. Vol.). It bears a different connotation from a "master plan." Absent a plan outside the ordinance itself, the question is whether the inclusive scope of the statutory objectives inhere in the regulations enacted. *Kozesnik* v. *Montgomery Township, supra,* 131 A.2d at 7.

The manifest purpose of the statutory requirement for the appointment and preliminary planning of the zoning commission is to insure that a thorough and understanding regulatory design will be explored and considered prior to enactment. The objective of the public hearings by the commission is to afford full opportunity for expression of approval or objection by the variant interests to be affected by the proposal. By this process the zoning needs of the town can be ascertained.

To my mind, these considerations dispute the conclusion that the 1951 ordinance was legally enacted as a zoning regulation. Since it appears from the record presented that the ordinance was not constituted according to the mandatory directives of the Zoning Enabling Act, it cannot be declared to be of legal force and effect. Otherwise, the ordinance amounts to an unwarranted assumption of zoning power which the town is not entitled to exercise.

Regulations undertaken by municipalities under authority conferred by zoning enabling statutes must follow the grant by the Legislature of the power to zone. The Town of Shaftsbury could receive and translate the power delegated by the State only by strictly pursuing the procedure and following the design of the statute. *Thompson v. Smith, supra,* 119 Vt. at 498-501; See 8 McQuillin, Municipal Corporations, *supra,* §2558 and 58 Am. Jur., Zoning §7.

The present record on appeal is empty of any affirmative showing that a zoning commission was appointed to prepare a comprehensive plan or that the attempt to regulate outdoor advertising was in accordance with a comprehensive plan. Indeed the preamble and the restricted scope of the ordinance itself oppose any inference of statutory compliance with these essential requirements.

Granting that indiscriminate advertising along scenic highways is aesthetiaclly offensive and that it is desirable to control this activity at the local government level, the Legislature has ordained that this function can be performed only within the framework of properly established zoning procedures. Courts are not at liberty to ignore and nullify these restrictions upon the delegated power, although the shortcut indicated in the Shaftsbury ordinance might hasten the accomplishment of a worthy objective.

**Shangraw, J.,** dissenting. The court below had jurisdiction over this action. Neither the findings of fact, nor the judgment order dis-

missing the petition without reasons being given therefor, resolved the issues. The parties were then and there entitled to a declaration of their rights.

It is my judgment that this Court on the record before us, should not itself, and at this time, assume the duty of making such declaration in the first instance. Consistent with orderly procedure the case should be first adequately sugared-off below before appellate review.

I would vacate the judgment and remand the cause for such determination.