RICHARD H. KIMBALL ET AL. *v*. COURT OF COMMON
COUNCIL OF THE CITY OF MERIDEN ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 6, 1960—decided January 24, 1961

*Samuel H. Platcow,* with whom was *Francis R. Danaher,* for the appellants (defendants Mills et

al.) ; with him on the brief was *William G. Comiskey,* corporation counsel, for the appellant (named defendant).

*William A. Jacobs,* with whom were *James M. S. Ullman* and, on the brief, *David H. Jacobs,* for the appellees (plaintiffs).

SHEA, J.   On June 1, 1959, the court of common council of Meriden, acting as the zoning commission, voted to change properties of the defendants Betsey C. Mills and Ruby J. Warren, hereinafter called the defendants, from a multifamily R-III district to a commercial I district.   See Meriden Zoning Ordinance, art. 2 (1959).   The plaintiffs, nearby property owners, appealed to the Court of Common Pleas, which set aside the action of the council.   The defendants have appealed.

The area covered by the change of zone is at the intersection of East Main Street and Parker Avenue North.   East Main Street, which is route 6A, runs, generally, in an easterly and westerly direction.   It is the principal artery of traffic between Meriden and Middletown and is heavily traveled.   It is intersected by Parker Avenue North and, to the south, by Parker Avenue.   At this intersection, East Main Street is forty-two feet wide, Parker Avenue North is thirty feet wide, and Parker Avenue is sixty-seven feet wide and slightly offset to the east from Parker Avenue North.   One block to the west, East Main Street intersects Broad Street, a main highway which runs northerly and southerly.   The intersection of Broad Street and East Main Street was, at one time, considered to be the center of Meriden. It is an old center of commercial activity.   A number of business establishments are located on both

sides of East Main Street between Broad Street and Parker Avenue. Property on the west side of Parker Avenue is also used for business purposes.

The Mills property, consisting of about five acres of land, is located at the northeast corner of East Main Street and Parker Avenue North. It has a frontage of about 323 feet on East Main Street, a frontage of about 310 feet on Parker Avenue North, and a depth which varies to a maximum of approximately 734 feet. It has a frontage, too, of 50.78 feet near the middle of the block on Liberty Street, which runs parallel to, and one block north of, East Main Street. A one-family dwelling house is situated on the property. The Warren property has a frontage of 125 feet on Parker Avenue North and a depth of 133.82 feet. It is bounded southerly and easterly by the Mills land.

Zoning originally became effective in Meriden in 1927. *Leveille* v. *Zoning Board of Appeals,* 145 Conn. 468, 144 A.2d 45. On December 1, 1958, Meriden adopted a new map and zoning ordinance, which became effective on January 1, 1959. The zoning ordinance divided the entire city into seven zoning districts as shown on the zoning map. Meriden Zoning Ordinance, art. 2 (1959). The properties of the defendants were placed in a multifamily R-III district which permits the erection of dwellings for from two to eight families. These dwellings are not to exceed two and one-half stories in height. The defendants did not appeal from what was in effect a change of zone of their property from a general residence zone to the multifamily R-III zone. The commercial zone ended at Parker Avenue, and the property surrounding the defendants' land was zoned for residential purposes. About a mile and a quarter to the east on East Main

Street, another area was zoned for commercial uses.

The Mills property was the subject of an earlier appeal to this court in *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 137 A.2d 542, where we sustained the decision of the Court of Common Pleas which held that the zoning board of appeals lacked authority to grant a variance because the notice of a public hearing on the petition was not reasonable as to time. The record in that case shows that the Mills property, under the zoning ordinance then in effect, was in a general residence district, in which were permitted detached, or a pair of semidetached, dwellings for not more than four families. A-358 Rec. & Briefs 403. The *Slagle* case, supra, was decided in December, 1957. We can presume that the council was aware of the action of the zoning board of appeals in improperly permitting a variance, and it may be assumed that the council had the *Slagle* case in mind when it adopted a new zoning ordinance classifying the Mills property in a multifamily R-III zone.

In April, 1959, within four months after the adoption of the new zoning ordinance, the defendants filed a petition for a change of zone to commercial I. This change would permit the construction of a commercial building, to be used for retail stores and offices. There would be space for off-street parking. In their petition, among other reasons for the change the defendants gave the following: "The exceptional shape and size and topography of said property render said property unusable for residential purposes. This makes the property unique in this area and due to this uniqueness unnecessary hardship would result to the petitioners if said Zoning Ordinance is not changed." The petition was referred to a committee of the council. After holding a public

hearing, the committee voted to recommend favorable action on the petition. The council voted to amend the zoning ordinance as requested by the defendants, giving the following reason for its action. "This change of zone is a natural expansion, a firm step in the direction of progress, it is not spot zoning, as we cannot consider the street, Parker Avenue North as a natural barrier. The property is practically abutting on large commercial ventures, a supermarket, gas stations with a new commercial building in the progress of construction near by, the north end of Parker Avenue (South) on the west side is commercial with a gas station and a large automobile Sales and Service station located there." The plaintiffs, aggrieved property owners in the area, appealed to the Court of Common Pleas, claiming that the council acted illegally, arbitrarily and in abuse of its discretion. In the trial court, the case was decided on the record before the council, supplemented by a stipulation as to certain facts agreed on by the parties. The court concluded that the change constituted spot zoning and was invalid.

One of the essential purposes of zoning regulation is to stabilize property uses. *Strain* v. *Mims,* 123 Conn. 275, 287, 193 A. 754. Spot zoning is not permitted. *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 62, 89 A.2d 746. Ordinarily, changes in zones should not be made unless new conditions have arisen or there have been substantial changes in the area. *Zoning Commission* v. *New Canaan Building Co.,* 146 Conn. 170, 175, 148 A.2d 330; *Parsons* v. *Wethersfield,* 135 Conn. 24, 30, 60 A.2d 771. The granting to a small area of privileges which are not extended to other land in the vicinity can be justified by a zoning authority "only when it is done in furtherance of a general plan properly adopted for and

designed to serve the best interests of the community as a whole." *Kuehne* v. *Town Council,* 136 Conn. 452, 460, 72 A.2d 474; *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. In deciding whether the action of the council constituted spot zoning, we must consider two important factors. To be valid, the zone change must permit the property to be used in an appropriate manner, in view of its type and location and the nature of the use being made, or which could be made, of the surrounding territory. *Kutcher* v. *Town Planning Commission,* supra. The change must also be a reasonable and logical development of the comprehensive plan. In other words, the new use of the property must do more than meet the wishes of the owner in carrying out some plan of his; it must serve the public interest in the zoning development of the community. *Bartram* v. *Zoning Commission,* 136 Conn. 89, 93, 68 A.2d 308; *Kutcher* v. *Town Planning Commission,* supra.

Spot zoning has been defined as "a provision in a zoning plan or a modification in such a plan, which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole." Maltbie, "The Legal Background of Zoning," 22 Conn. B.J., pp. 2, 5. Zoning authorities can exercise only such power as has been validly conferred upon them by the General Assembly. When a zoning commission makes a change of zone, the commission must conform to the provisions of § 8-2 of the General Statutes. *Woodford* v. *Zoning Commission,* 147 Conn. 30, 32, 156 A.2d 470. The establishment of zones must be in accordance with the comprehensive plan. *State* v. *Huntington,* 145 Conn. 394, 399, 143 A.2d 444.

In this case, the action of the council constituted spot zoning. It affected only two pieces of property, and they adjoined each other. It did not promote or carry out the purposes of the comprehensive plan. *Guerriero* v. *Galasso,* 144 Conn. 600, 606, 136 A.2d 497. The declaration of the council that the change of zone was "a natural expansion, a firm step in the direction of progress" did not validate its action, especially when the change created a commercial zone in an area almost entirely surrounded by a residential zone. *Woodford* v. *Zoning Commission,* supra, 33. In adopting the change, the council declared that it could not consider Parker Avenue North a natural barrier on the commercial zone. Nevertheless, Parker Avenue North had been fixed as a limit for the extension of business in the area. In the short space of time which intervened between the adoption of the ordinance on January 1, 1959, and the time when this petition was filed by the defendants, no changes had occurred there. Conditions were identical. The declared purposes of the Meriden zoning ordinance are the same as those set forth in § 8-2 of the General Statutes, but there is nothing in the record to show that the council, in adopting the change, gave consideration to any of the factors enumerated in the statute.

While the change in zone might inure to the profit or advantage of the individual applicants, there was nothing to show that the interests of the community as a whole or the purposes of the comprehensive plan were advanced by the action of the council. These considerations are paramount. *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 125, 127 A.2d 822; *Neuger* v. *Zoning Board,* 145 Conn. 625, 633, 145 A.2d 738. The trial court was correct in holding that the change of zone constituted spot zoning and that

104

it was invalid. *Woodford* v. *Zoning Commission,* supra, 32; *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 62, 89 A.2d 746.

There is no error.

In this opinion the other judges concurred.