## Town of Lebanon *v.* John H. Woods

King, C. J., Murphy, Alcorn, Shannon and House, Js.

Argued June 4—decided November 24, 1965

*Charles Alfano,* with whom, on the brief, was *Paul M. Palten,* for the appellant-appellee (defendant).

*Robert C. Leuba,* with whom was *Allyn L. Brown, Jr.,* for the appellee-appellant (plaintiff).

KING, C. J. On November 6, 1961, the defendant purchased a tract of land of about 400 acres in the town of Lebanon. His purpose was to establish a development consisting of some 1060 houses, which were to range in price from $7950 to $10,500 and were to be built on lots of approximately one-quarter acre each. The defendant chose Lebanon for his development because, at the time he purchased the land, the town was without zoning. Subsequently, effective April 16, 1962, Lebanon did adopt zoning and subdivision regulations pursuant to chapters 124 and 126 of the General Statutes. The zoning regulations, inter alia, established, with certain exceptions obviously inapplicable to the defendant's property, one acre as the minimum lot size throughout the town. After the adoption of the zoning and subdivision regulations the defendant built fourteen houses on lots of less than one acre in sections 3 and 4 of his development.[1]

The town of Lebanon brought this action seeking, inter alia, (1) an injunction restraining the defendant from proceeding further with his development unless and until the subdivision and zoning regulations were complied with and (2) a mandatory injunction compelling the defendant to remove the fourteen houses erected on lots which did not conform to the zoning regulations.[2] The court granted

[1] Prior to the effective date of zoning, the defendant had erected five "model homes" on lots of less than one acre in sections 3 and 4. The plaintiff does not claim that these five houses are subject to the zoning or subdivision regulations.

[2] The defendant in his counterclaim claimed a declaratory judgment determining, inter alia, whether the zoning and subdivision regulations were invalid. Our decision on the plaintiff's claim for

an injunction restraining the defendant from proceeding further with the development until he complies with the zoning and subdivision regulations but refused to grant a mandatory injunction ordering the removal of the fourteen houses already erected. From this judgment the defendant appealed and the plaintiff took a cross appeal.

## I

The defendant's first basic claim is that the zoning regulations,[3] which were designated as "interim", are invalid for two reasons. The first reason is that there is no statutory authority conferred on a municipality to enact "interim" zoning regulations. Section 8-2 of the General Statutes (as amended, in ways immaterial to the present controversy, in 1959 and by No. 569 of the Public

injunctive relief makes unnecessary any separate consideration of the defendant's declaratory judgment claim.

[3] "ZONING REGULATIONS. Pending the preparation of a Master Plan and Zoning Regulations for the Town of Lebanon by the Planning and Zoning Commission of the Town of Lebanon, the following interim zoning regulations relating to minimum lot sizes are promulgated by said Commission pursuant to the provisions of Chapter 124 of the Connecticut General Statutes.

"Section 1. Except as otherwise provided in sec. 2. hereof, the minimum lot size in the Town of Lebanon shall be one acre.

"Section 2. The minimum lot area for one seasonal dwelling, cottage or cabin or one camp which is erected within 500 feet of the high water mark of any pond, lake or other body of water in the Town of Lebanon shall be 6000 sq. ft. provided that the water supply and sewage disposal system conform to the State Sanitary Code requirements for the year around use and have been approved by the Town Health Officer for the number of people for which the seasonal dwelling, cottage or cabin, or camp is arranged, designed, intended or used, and further that the lot shall contain not less than 6000 sq. ft. and not less than 1000 sq. ft. of area for each person for which the camp is arranged, intended, designed or used.

"For the purpose of these regulations, a seasonal dwelling shall mean a dwelling, cottage, cabin or camp, arranged, intended, designed or used for continuous human habitation only between the months of May to October, inclusive.

Acts of 1961), which authorizes the zoning commission of a municipality to adopt zoning regulations operative within the limits of that municipality, contains no requirement with respect to the duration of those regulations. Indeed, all zoning regulations are in a sense "interim" because they can be amended at any time, after proper notice and subject to certain limitations. General Statutes § 8-3. The fact that the regulations in question were designated as "interim" does not make them invalid, nor does it strengthen the defendant's position. *Taylor* v. *Shetzen,* 212 Ga. 101, 102, 90 S.E.2d 572; 58 Am. Jur., Zoning, § 137. As pointed out in the preamble to the interim regulations, they were intended to be operative only

---

"Sec. 3. No building or structure shall be erected closer than 55 ft. from the center line of the street or highway on which the lot abuts, or 30 ft. from the front property line, whichever is greater, provided, however, that the foregoing provisions shall not apply to a seasonal dwelling.

"Sec. 4. The minimum frontage and average minimum width of each lot, except a lot on which a seasonal dwelling is erected, shall be 125 ft., and the minimum side yard shall be 20 ft. The minimum side yard of a lot on which a seasonal dwelling is erected shall be five feet. Not more than one dwelling shall be erected on any lot.

"Sec. 5. No building intended for dwelling purposes, shall hereafter be erected, reconstructed, enlarged, altered or moved unless the living space is not less than 750 sq. ft. if on one floor or 1000 sq. ft. if on two floors, provided, however, that the living space of a seasonal dwelling shall not be less than 500 sq. ft. Living space shall be included only if it has a minimum head room of seven feet, and where located above the first floor, only if accessible by a permanent inside stairway. Porches, basement rooms whose floor is below the grade, garages and other attached accessory structures shall not be included as living space.

"Sec. 6. These regulations shall be enforced by the Zoning Officer to be appointed by the Planning and Zoning Commission of the Town of Lebanon. Any violation of these regulations may be punished, enforced, corrected or abated as provided in Chapter 124 of the General Statutes.

"Sec. 7. These regulations shall take effect Apr. 16, 1962."

until such time as more complete regulations could be formulated and adopted.

The second reason for claiming the regulations invalid is that they were not adopted with reference to a "comprehensive plan" as required by § 8-2 of the General Statutes. A comprehensive plan is to be found in the zoning regulations themselves. *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173; *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 540, 209 A.2d 179; *Corsino* v. *Grover,* 148 Conn. 299, 313, 170 A.2d 267; *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822. It is "a general plan to control and direct the use and development of property in a municipality . . . by dividing it into districts according to the present and potential use of the properties." *Miller* v. *Town Planning Commission,* 142 Conn. 265, 269, 113 A.2d 504; *State* v. *Huntington,* 145 Conn. 394, 399, 143 A.2d 444.

The town of Lebanon is a sparsely settled rural community. It has no public water or sewerage system, and the defendant planned a community water system for his development. On October 1, 1961, Lebanon was almost exclusively residential. It had 750 dwellings and nine small commercial or mercantile establishments, one of which was a resort hotel. The zoning regulations disclose a comprehensive plan imposing lot area, building placement and minimum living space requirements on all property in the town as a whole except that special and less drastic requirements are made applicable to "seasonal"[4] dwellings if they are

---

[4] A "seasonal" dwelling is defined as one used for continuous habitation only during the months of May through October. See *Beerwort* v. *Zoning Board of Appeals,* 144 Conn. 731, 734, 137 A.2d 756.

equipped with approved water and sewage disposal systems and are located within 500 feet of the high-water mark of any pond, lake or other body of water. While the trial court treated the regulations as dividing the town into two districts, it is probably more accurate to treat them as creating one district covering the entire town with liberalized requirements for dwellings falling within the "seasonal" property classification.

Obvious purposes of these regulations are to prevent the overcrowding of land, to allow space for adequate private water and sewerage systems, and, in the case of residence properties, to provide for adequate living area. All these are permissible zoning objectives under § 8-2 of the General Statutes.

The defendant, as a further claim of invalidity based on a failure of the zoning regulations to conform to a comprehensive plan, stresses the obvious fact that, although these regulations, as already pointed out, control minimum lot size and the placement of buildings on property as well as the minimum living areas of residential property, they contain no regulation restricting the activities which may be pursued on any property in the town.[5] The commission may have assumed that the town would remain residential during the life of the interim regulations. But in any event the regulations, under § 8-2, must conform to a comprehensive plan as we have defined the term in cases such as *Miller* v. *Town Planning Commission,* supra, and *State* v. *Huntington,* supra.

---

[5] In passing, it may be observed that it is unusual for a property owner to attack the validity of zoning regulations on the ground that they insufficiently restrict the activities which he may conduct on his own property.

Our definition of a comprehensive plan, already quoted, embraces two different types of regulations governing the use or utilization of property. One type concerns the placement of structures on property. This can properly be controlled by regulations prescribing minimum lot size, setback and side-yard provisions, all of which are found in the Lebanon regulations. The other type governs the activities or enterprises which are permitted to be conducted on property, that is, the use, in the more restricted sense of the word "use", which may be made of property. These can properly be controlled by regulations establishing residential, mercantile, industrial and other districts. A good comprehensive plan would regulate the use or utilization of property in each respect. Nothing can be found in the Lebanon regulations, however, which controls this second type of use. Thus the crucial question on this branch of the case is whether this deficiency is so serious as to render all of the zoning regulations wholly void and unenforceable and to leave Lebanon with no zoning whatsoever.

Whether or not zoning regulations conform to a comprehensive plan, as we have defined it, must depend in large part on the character of the locality for which they are designed. Manifestly a comprehensive plan of zoning adequate for a city such as Hartford must be much more complex than one adequate for a small, rural, almost wholly residential community such as Lebanon. The zoning commission, in the enactment of zoning regulations under § 8-2, was a municipal legislative body. As such it was clothed with a liberal discretion as to what detail would be necessary to constitute an adequate comprehensive plan for Lebanon within the

statutory authority under which the commission acted. "[A] zoning commission's decision cannot be upset by a court merely because the court feels a different classification might have been preferable." *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 267, 205 A.2d 774. The mere fact that the regulations obviously would have been improved had they contained provisions governing in more detail the future development of the town and protecting the town against the possible indiscriminate intrusion of business, mercantile or industrial enterprises would not, under the circumstances of this particular case, including the rural, sparsely populated, almost wholly residential character of the town and the absence of evidence of any threat of such commercial intrusion, justify this court in holding the entire regulations void and unenforceable for failure to manifest a permissible comprehensive plan.

A subordinate claim of invalidity is predicated on a failure of the interim zoning regulations to divide the town into districts of defined area and boundaries. This is not necessarily required by § 8-2, the language of which is permissive rather than mandatory. The case of *State* v. *Huntington,* supra, on which the defendant relies, holds that if such area districts are to be established, they must be described with sufficient precision to be reasonably ascertainable. This is but an application of a basic principle of zoning, which is, that every owner of property located in a town which has adopted zoning is entitled to be able to ascertain, with reasonable certainty, what uses he may legally make of any portion of his property. *Leveille* v. *Zoning Board of Appeals,* 145 Conn. 468, 473, 144 A.2d 45.

From this basic principle it follows that zoning regulations must contain (a) adequate information for the determination of the uses permitted and prohibited in each district and (b) adequate information for the determination of what properties in the town fall into each district. Normally, and perhaps necessarily where the zoning regulations are at all complex, the second requirement is met by dividing the town into several districts of defined area and boundaries. *State* v. *Huntington,* supra, 398. But that is not essential under § 8-2 if compliance with the foregoing basic principle is otherwise achieved.

The defendant makes some claim that the phrase "high water mark of any pond, lake or body of water" is so ambiguous as to be meaningless, thus making it impossible to determine what property would fall into the "seasonal" property classification. We do not share this view. He points to no actual instance of any difficulty in this determination, and the record is barren of evidence of any such difficulty. Certainly the defendant's property was not claimed to be within 500 feet of any body of water, nor was it to be occupied for only a portion of the year. Thus, it could not, by any possibility, fall into the "seasonal" property classification. It, therefore, necessarily fell into the only other classification, and this classification clearly required one-acre lots and clearly comprised, as a district, all property in the town not embraced in the seasonal property classification. The regulations were not invalid merely because districts of defined area and boundaries, at least in the usual sense, were not established.

The court was not in error in rejecting the claim of the defendant that the zoning regulations as a

whole failed to conform to any permissible com-
prehensive plan and were void and unenforceable
against him.

## II

The defendant's second basic claim is that the
subdivision regulations, adopted under General
Statutes § 8-25, are invalid because the town had
not previously enacted a "plan of development"
under § 8-23, that is, that the adoption of a "plan
of development" is a condition precedent to the
enactment of valid subdivision regulations. This
claim is without merit. Section 8-25 does provide:
"Such [subdivision] regulations shall provide . . .
that the proposed streets are in harmony with
existing or proposed principal thoroughfares shown
in the plan of development as described in section
8-23." But this provision applies only where there
is a plan of development, and here there was none.
Section 8-25 also provides that a planning author-
ity, "[b]efore exercising the powers [of approving
or disapproving a subdivision] . . . shall adopt
regulations covering the subdivision of land." Here,
however, there is no question that subdivision
regulations were adopted. It is also true that a
plan of development is controlling "as to municipal
improvements and the regulation of subdivisions of
land." *Purtill* v. *Town Plan & Zoning Commission,*
146 Conn. 570, 572, 153 A.2d 441. But this again
applies only where there is a plan of development.
In short, there is nothing in §§ 8-25 and 8-23 mani-
festing a legislative intent to make the adoption of
a plan of development a mandatory condition
precedent to the adoption of subdivision regula-
tions. See *Crescent Development Corporation* v.
*Planning Commission,* 148 Conn. 145, 147, 168 A.2d

547; *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 81, 103 A.2d 814.

The defendant makes the alternative claim that in any event he is not required to submit a subdivision plan to the planning commission in compliance with § 8-25 of the General Statutes, because, prior to the adoption by the town of the provisions of that statute, he had already submitted what he terms a "subdivision plan" to the town selectmen, who had approved it, whereupon it was filed in the town clerk's office. Our statutes do provide that when approval of a subdivision plan has been obtained from "the planning commission of any town . . . or other body exercising the powers of such commission" prior to a change in the subdivision regulations, zoning regulations, or zoning districts, that plan need not be resubmitted even though the regulations have been changed. General Statutes §§ 8-26a, 8-28a, 8-28b. Those statutes do not benefit this defendant for at least two reasons. In the first place, the plan approved by the selectmen was not a subdivision plan, but merely a road and drainage plan. Secondly, the selectmen were not an "other body exercising the powers of . . . [a planning] commission." Their authority is derived from what was § 13-25 of the General Statutes (now § 13a-71) and extends only to approval of a road plan. Insofar as the defendant's plan involved drainage, its approval by the selectmen was not authorized. The powers of a planning commission, on the contrary, are broadly defined. General Statutes § 8-23; see also §§ 8-24, 8-25, 8-29. The approval of the defendant's road plan by the selectmen cannot be equated with the approval of a subdivision plan by the planning authority. The court was not in error in holding that the defendant is

not excused from filing a subdivision plan with the planning authority of the town of Lebanon. *Corsino* v. *Grover,* 148 Conn. 299, 314, 170 A.2d 267; *Crescent Development Corporation* v. *Planning Commission,* supra.

## III

For convenience, we next consider the only basic ground pursued by the plaintiff in its cross appeal. This is that the court erred in refusing to grant a mandatory injunction compelling the defendant to remove the fourteen houses erected on lots of less than one acre in sections 3 and 4 of the development. It must be borne in mind that this proceeding is not an appeal from the decision of a zoning authority. Rather, it is an equitable action for injunctive relief. *Stapleton* v. *Lombardo,* 151 Conn. 414, 416, 198 A.2d 697. The right to such relief is seldom, if ever, absolute. Where injunctive relief is permissible at all, the trial court has discretion whether or not to grant it. *Holt* v. *Wissinger,* 145 Conn. 106, 113, 139 A.2d 353, and cases cited. Thus, the issue is whether the court could have reasonably concluded that the defendant, before the effective date of the zoning and subdivision regulations, had already acquired, in sections 3 and 4, rights of a character such as to be entitled to equitable recognition. *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 444, 86 A.2d 74. The court's conclusion is, of course, to be tested by the subordinate facts. The court found substantial work had been done on the roads, water system and storm sewers in sections 3 and 4, prior to April 16, 1962, the effective date of the regulations. The court further found that "[i]f it were necessary to comply with one-acre zoning, some of the roads,

water lines and storm sewers in Sections 3 and 4 would have to be abandoned." The plaintiff's attack on this finding is unwarranted. Even though work had not actually begun on the houses themselves prior to April 16, 1962, there had been considerable work expended in the preparation of the lots for these houses. This work would have had to be abandoned if the defendant was then to proceed in conformity with the newly enacted zoning regulations. We cannot say that under all the circumstances it was an abuse of discretion for the court to deny the plaintiff mandatory injunctive relief to compel the removal of the houses erected in sections 3 and 4 of the development.

## IV

The final basic claim of the defendant is that he had established a nonconforming use in sections 3 and 4 of the tract and that consequently he could proceed to develop the entire tract without reference to the zoning and subdivision regulations. His position is that the court's conclusion that he "acquired vested rights in Sections 3 and 4" calls, as a matter of law, for the further conclusion that the entire tract was a nonconforming use and, therefore, not subject to the zoning and subdivision regulations. In support of this claim he cites the cases of *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 161, 32 A.2d 635, and *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594. These cases distinguish between an extension of a nonconforming use, which is prohibited, and a mere increase in the amount or volume of that use, which is permissible. His claim is that the building of houses on one-quarter-acre lots on the remainder of the tract

would be merely an increase of the use established in sections 3 and 4. Neither of the cited cases supports this claim. In each, there was no question that the entire tract involved was a nonconforming use, and the controverted issue was whether or not the particular activity in question was a new and different use, that is, an extension of a nonconforming use or whether it was a mere increase of an already established nonconforming use. In each case it was held that a new use, that is, an extension of a nonconforming use, was being sought. In the instant case, the controverted issue is whether or not the entire tract is, as matter of law, a nonconforming use because of the activities on the lots in sections 3 and 4.

To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be "irrevocably committed" to that use. *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 443-445, 86 A.2d 74; *Wallingford* v. *Roberts,* 145 Conn. 682, 684, 146 A.2d 588. Since the tract, other than sections 3 and 4, was not "irrevocably committed" to development as one-quarter-acre lots, that portion of the tract was not a nonconforming use as to lots of that size when the zoning regulations were adopted.

These conclusions render unnecessary consideration of the requested corrections of the finding not already discussed. *Reciprocal Exchange* v. *Altherm, Inc.,* 142 Conn. 545, 547, 115 A.2d 460.

There is no error either on the defendant's appeal or on the plaintiff's cross appeal.

In this opinion ALCORN, SHANNON and HOUSE, Js., concurred.

MURPHY, J. (dissenting). In my judgment, the opinion in this case will set back zoning in Connecticut for many years. Our cases have been cited as authority in other jurisdictions and by text writers because we have adhered to good zoning practices with due regard to the public and private interests involved. This case may very well change that picture. The particular harm lies in the fact that regulations which set no standards, which do not "zone" and which have not been made in accordance with a "comprehensive plan" are sanctioned. That they are termed "interim" zoning regulations is of no particular importance. And I find no fault in the holding that the subdivision regulations are valid. My disagreement relates entirely to the so-called zoning regulations.

This litigation was instituted by the town, which alleged in its complaint that the town planning and zoning commission had adopted zoning regulations, and it sought to enjoin the defendant from constructing buildings on his property in violation of them. In order to prevail it was incumbent on the town to prove that valid zoning regulations had been adopted. I maintain that the regulations which were adopted are not zoning regulations and that the town failed in its burden of proof.

The opinion quotes the definition of a comprehensive plan from *Miller* v. *Town Planning Commission,* 142 Conn. 265, 269, 113 A.2d 504, and *State* v. *Huntington,* 145 Conn. 394, 399, 143 A.2d 444, to be "a general plan to control and direct the use and development of property in a municipality . . . by dividing it into districts according to the present and potential use of the properties." The opinion then attempts to evade the requirements of that definition by holding that the failure to prescribe uses

and provide districts in Lebanon is meaningless. It completely ignores another holding in *Huntington,* supra, 398, that "[t]he ultimate object of zoning regulations is to confine certain classes of buildings and uses to designated localities or districts." See also *Thayer* v. *Board of Appeals,* 114 Conn. 15, 23, 157 A. 273; *State ex rel. Chatlos* v. *Rowland,* 131 Conn. 261, 266, 38 A.2d 785.

All of our cases, until now, and all of the recognized text writers hold that the regulation of the use of property is the keystone of the zoning arch. Zoning is a product of the twentieth century. It was conceived to prevent the indiscriminate and haphazard use of property without respect to orderly development. As Metzenbaum, Zoning (1930), p. 6, puts it: "Zoning does no more than apply the rules of good housekeeping to public affairs. It keeps the kitchen stove out of the parlor, the bookcase out of the pantry and the dinner table out of the bedroom." Justice Hinman incorporated that quotation in his opinion in *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 53, 154 A. 161. Yokley, in volume one of Municipal Corporations § 120, p. 321, gives this court credit for providing a very sensible definition of "zoning" in *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 540, 45 A.2d 828, wherein we quoted from *State ex rel. Spiros* v. *Payne,* 131 Conn. 647, 652, 41 A.2d 908, and used the definition which the opinion in this case attributes to the *Miller* and *Huntington* cases as the definition of a "comprehensive plan."

Let me quote from authoritative text writers. "Zoning is governmental regulation of the uses of land and buildings according to districts and zones." 8 McQuillin, Municipal Corporations (3d Ed. Rev.) § 25.01, p. 11. "Though zoning is composed of a

variety of restrictions or limitations, its chief and principal characteristic—as distinguished from other restrictive legislation—is the provision which places the restriction upon the use of property." 1 Metzenbaum, Zoning (2d Ed.), p. 12. " '[Z]oning relates to the regulation of the use of property—to structural and architectural designs of buildings; also the character of use to which the property or the buildings within classified or designated districts may be put.' " 1 Rathkopf, Zoning and Planning § 2, p. 1-7 (quoting from *Seligman* v. *Belknap,* 288 Ky. 133, 135, 155 S.W.2d 735). " 'Zoning' is a technical term broadly signifying a scheme of regulation of land uses, in exercise of the police power, which entails the division of the corporate area of a municipality into zones or districts and the prescribing of the types of land uses that are permitted in each zone or district to subserve the public health, safety, morals or public welfare of the community. Zoning is a legal restraint on an owner's use of his property based upon the police power to serve the public interest or police power objectives, and through the exercise of the zoning power the use of land and buildings and the bulk and height of buildings are regulated to promote the welfare of the community as a whole, by protecting and preserving the true character of a neighborhood through exclusion of new uses incompatible with the defined uses prescribed for the neighborhood." Rhyne, Municipal Law § 32-1, p. 811.

The trial court held that the regulations divided the town into two residential districts, but the opinion does not agree with this conclusion. Actually, these regulations do not set up any districts. As the preamble indicates, the stated purpose of the regulations is to regulate minimum lot sizes. They

establish a minimum lot size of one acre throughout the town and then make an exception for seasonal properties within 500 feet of the high-water mark of any body of water. Any type of structure, from a woodshed to an apartment house, can be built, and any kind of use, residential, commercial or manufacturing, can be conducted on any lot in town which is one acre or more in area regardless of where it is located or the nature or use of the adjoining properties. Thus, an automobile junk yard or a mink ranch can legally be established next door to the First Congregational Church, and a slaughterhouse or noxious chemical plant can be built adjacent to the town hall. No attempt is made to control the use to which property in the town is to be put, although one of the essential purposes of zoning regulation is to stabilize property uses. *Strain* v. *Mims,* 123 Conn. 275, 287, 193 A. 754; *Abbadessa* v. *Board of Zoning Appeals,* 134 Conn. 28, 34, 54 A.2d 675; *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552; *Zoning Commission* v. *New Canaan Building Co.,* 146 Conn. 170, 175, 148 A.2d 330; *Kimball* v. *Court of Common Council,* 148 Conn. 97, 101, 167 A.2d 706. Zoning is concerned primarily with the use of property. *Abbadessa* v. *Board of Zoning Appeals,* supra, 32; *State ex rel. LaVoie* v. *Building Commission,* 135 Conn. 415, 419, 65 A.2d 165; *Del Buono* v. *Board of Zoning Appeals,* 143 Conn. 673, 679, 124 A.2d 915; *Purtill* v. *Town Plan & Zoning Commission,* 146 Conn. 570, 572, 153 A.2d 441; *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148 Conn. 172, 176, 169 A.2d 268. Zoning consists of a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the property.

*State ex rel. Spiros* v. *Payne,* 131 Conn. 647, 652, 41 A.2d 908; *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 540, 45 A.2d 828.

The object of zoning is to adopt measures to regulate property uses in conformance with a comprehensive plan in a manner to advance the public welfare. *Steiner, Inc.* v. *Town Plan & Zoning Commission,* 149 Conn. 74, 75, 175 A.2d 559. General Statutes § 8-2 requires the zoning regulations to be made in accordance with a comprehensive plan. The trial court found that the town had never formally adopted a comprehensive plan but that the regulations present a reasonable comprehensive plan. The opinion, by negating all of the case law in this state which has repeatedly held that the regulation of the use of property is the fundamental purpose of zoning, has also disregarded the portion of General Statutes § 8-2 which provides: "Such regulations *shall* be made with reasonable consideration as to the character of the district and its peculiar suitability for particular *uses* and with a view to conserving the value of buildings and encouraging the most appropriate *use* of land throughout such municipality." (The italics are mine.) "Shall" as used therein is mandatory and not permissive. See *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584. Furthermore, no part of a statute should be treated as insignificant or unnecessary. *McAdams* v. *Barbieri,* 143 Conn. 405, 419, 123 A.2d 182.

On several occasions prior to Woods' advent into Lebanon, the voters refused to adopt zoning. When they woke up to what he planned, they changed their attitude and submerged their "independence" in the desire to block his development. That was the obvious purpose of these regulations. Had they

been properly drafted, I would agree to them. But I do not feel that the law on zoning as it has been developed in this state should be undermined to accommodate the particular objective of the citizens of the town of Lebanon in this case. Naturally the requisites of an adequate zoning law for a large urban area should be more detailed and complex than that needed to properly zone a farming community such as Lebanon. The standards by which all regulations are measured, however, do not vary from town to town. And while liberality is extended to the local legislative body, it cannot substitute its standards for those set out in the statute. Interim regulations must be measured by the same yardstick as regular ones. By no stretch of the imagination can these regulations be construed as maintaining or preserving the residential character of the town. In Lebanon, one can do anything he chooses with his property so long as it is not less than one acre in size except near a water hole. The pigs can make themselves comfortable in the parlor, the geese can do their honking in the bedrooms, and the cows can placidly chew their cuds in the guest rooms. That is not good housekeeping, and these regulations do not measure up to the standards of good zoning. They should be declared invalid.