[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. FACTS
In January of 1994, the defendant Charles Street Associates Limited Partnership filed with the defendant, Meriden Planning Commission, an application for a certificate of approval for a revised site plan dated January 13, 1994, regarding its property located at 122 Charles Street in Meriden.
The applicant sought approval of further amendments to a site plan which was originally approved on September 11, 1986 and revised with commission approval on September 19, 1988. The CT Page 1162 January 1994 application sought reduction of the number of units in the proposed apartment complex from 110 to 80 and retention of building #2 in the complex because of its historical designation.
The applicant advised the commission that it was seeking a revision of its 1988 (not 1986) site plan and that it was not requesting approval of a new site plan. The applicant maintained that the Commission's September 1988 approval of the plan revision was a new adoption and consequently was effective through September of 1995 pursuant to Connecticut General Statute 8-3.
It is uncontested that by 1994 the applicant did not have sufficient off-street parking to meet the existing parking regulations. In some manner, either because of a 1986 variance or because its site plan continued to be valid and exempted it from later zoning changes, the applicant had to demonstrate a reason that it was not required to comply with existing parking regulations.
AGGRIEVEMENT
The plaintiff Heritage House Associates is statutorily aggrieved by virtue of its ownership of an apartment complex known as 447 Broad Street abutting the defendants' property.
DISCUSSION
Connecticut has long recognized the protection of nonconforming uses and Section 8-2 provides in pertinent part:
 "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as the result of nonuse for a specified period of time without regard to the intent of the property owner to maintain the use."
However, Connecticut has also recognized for an extended period of time that a nonconforming use is a use which in fact exists at the time of the adoption of regulations and as a general rule, absent special statutory provisions, contemplated or anticipated uses are not protected. Lebanon v. Woods 153 Conn. 182 (1965). CT Page 1163
Several provisions of Section 8-3 of the General Statutes were adopted to address the problem of anticipated development which could be brought to a halt by regulatory changes after extensive planning. Section 8-3(h) provides that when there is a change in regulations:
 "[N]o improvements or proposed improvements shown on a site plan for residential property which has been approved prior to the effective date of such change . . . shall be required to conform to such change."
Section 8-3(i) provides that in the case of:
 "[A]ny site plan approved on or after October 1, 1984, except as provided in subsection (j) of this section, all work in connection with such plan shall be completed within five years after the approval of the plan."
Failure to complete the work within the five year period results in the automatic expiration of the plan except when the plan has been approved on or after October 1, 1989 and the zoning commission has extended the time for the completion of the work for a total period not to exceed ten years. In Section 8-3(i), "work" is defined to mean physical improvements required by the approved plan.
Section 8-3(1) provides:
 ". . . any site plan approved on or before October 1, 1989, except an approval made under subsection (j) of this section, shall expire not more than seven years from the date of said approval."
Thus, it appeared that under subsection (h), approved site plans are exempted from later adopted inconsistent regulations as long as the site plan remains valid. Under subsection (i), site plans approved after October 1, 1984 remain valid if the physical improvements are completed within a five year period. In the case of post October 1989 plans, ten years may be allowed for improvements if appropriate extensions are granted. Finally under8-3(1), plans approved after October 1, 1989 have a plan life, as opposed to a period for completing improvements, which expires seven years from the date of the approval. CT Page 1164
While the parties have ably briefed and argued numerous issues and a multitude of variations on the relationship of the various provisions in Section 8-3, it appears to the court that the certificate granted by the defendant commission is inappropriate unless the parking requirement is negated either by a currently existing site plan or by the 1986 variance.
THE SITE PLAN
It is uncontested that the site plan in question was originally approved on September 11, 1986. It is also uncontested that the plan was revised in 1988 and in fact was revised several times subsequent to that date. A September 11, 1986 approval is clearly before October 1, 1989 and therefore the plan has at a minimum a seven year life from September 11, 1986; i. e., a life until September 10, 1993.
If the 1988 modification or any subsequent modification is the equivalent of an approval as that term is used in 8-3(1), then the life of the site plan would be seven years from the modification/approval. Quite obviously, if the 1988 modification is the equivalent of an approval, the site plan would have a life until some time in 1995. In that event, the court would be required to examine in further detail whether a current site plan exempted this project from the current parking requirements with which it admittedly fails to comply.
The defendants argue strenuously that the 1988 modification of the site plan is the equivalent of an approval. They further argue that since the 1988 modifications were extensive, the life of the site plan should extend for seven years from 1988. The defendants cite no authority to the proposition that extensive modification equals approval. They rely on a policy argument that if a developer does not have time to develop, his economic efforts will be frustrated. The court sympathizes with the argument. The problem with the argument is that this is precisely the reason that the seven year grace period from "approval" was given in the statute in the first instance. Absent authority, the court is unwilling to believe that a modification to a site plan, approved by the applicable local regulatory authority in the sixth year and eleventh month, has the effect of granting a new seven year period of protection from after adopted regulations.
THE VARIANCE
CT Page 1165
In August of 1986, one month before the original site plan approval in this case, the zoning board of appeals granted a variance for this project. At that time the zone was industrial (M-2). The variance specifically granted permission to develop 128 residential units on the site. The reasoning of the board was that the old industrial structures on the site were no longer suitable for industrial uses, and that if the variance was not granted there would be no feasible use for the property. The property would continue to deteriorate and remain empty. At the time that the variance was granted, parking was not a problem on the site. In December of 1986, the Meriden City Council amended the zoning ordinance by changing the parking ratios to be applied to multi-family dwellings. The new ordinance, which continues to be in effect, requires two parking spaces per living unit regardless the number of bedrooms. This ordinance was adopted after the granting of the variance and after the commission's approval of the initial site plan. Consequently, it was not applied retroactively to the already approved site plan. The defendants argue that since the zoning board of appeals granted the variance pursuant to § 8-6(a)(3), which was done after a finding of "exceptional difficulty or unusual hardship" and since that variance and finding were not appealed, the variance has become final, runs with the land, and passes to subsequent owners. The defendants cite Garibaldi v. Zoning Board of Appeals of Norwalk,163 Conn. 235 (1972), for this proposition. To this point, the court agrees with the contention of the defendants. However, the defendants then argue that the 1986 variance for this parcel provided explicit permission to develop the 128 residential units on the site. The defendants further argue that this gives a vested right to develop 128 units and that neither the zoning commission nor the court has the authority to invalidate retroactively a variance granted by the Zoning Board of appeals in 1986.
It is the opinion of the court that a variance is granted to vary a particular and existing requirement of a zoning ordinance at the time that the variance is granted. The court knows of no authority, and the defendants have cited none, for the proposition that a variance may have prospective application to protect against later enacted zoning regulations neither existing nor contemplated at the time of the granting of the variance.
Protection against such later enacted regulations is the precise purpose of the various sections of 8-3 which have been analyzed in this opinion. The court acknowledges that the CT Page 1166 defendant developer had valuable rights which vested in it, or its predecessor in title, on September 11, 1986, and which expired on September 10, 1993. On and after that date, the developer must apply for a new site plan and that site plan must comply with applicable zoning at the time of the application or, in the event that a legally sufficient hardship can be shown, applicable regulations can be varied.
The appeal is sustained and the decision of the commission declared to be null and void.
THE COURT,
Kevin E. Booth, Judge