[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1313
 I
The plaintiffs, Harry S. Hammond, Jr. and Constance J. Hammond, appeal from a decision of the defendant, the Zoning Board of Appeals of the Town of Branford ("the Board"), granting, in part, an application by the defendant, William T. Lonergan ("Lonergan"), for variances allowing the subdivision of his property, known as 145 Linden Avenue, into two separate building lots.
Lonergan filed his application (Return of Record, Exhibit A) on December 3, 1998. On January 19, 1999, the Board held a public hearing on said application. On that same date, following the hearing, the Board met and voted to approve two of the variances requested. This appeal followed. A hearing was held on October 5, 1999, at which the plaintiffs were found aggrieved for purposes of standing to take this appeal.
 II
The subject property is a single parcel, with an area of approximately 60,219 square feet. It is rectangular in shape, measuring approximately 92 feet by 655 feet.. It has some 92 feet of frontage on Linden Avenue, a public roadway in the Town of Branford, but access to the property is by Linden Place, a private roadway, some 20 feet in width. There is a single-family house and a garage on the property. The property is in an R-3 district. The property was once part of a larger parcel, extending from Linden Avenue to Old Pawson Road. That part of the old parcel fronting on Old Pawson Road is now a separate building lot, owned by Lonergan.
By his application, Lonergan sought to vary the minimum square requirement of Section 25.2 Schedule B Line 3 (minimum dimension of square)of the Zoning Regulations of the Town of Branford ("regulations") by reducing the minimum to 92 feet; to vary the requirement of Section 25.2.1, subsection 2, by reducing the size of a rear lot to 15,000 square feet; and to vary the requirement of Section 25.2.1, subsection 6, by eliminating the requirement that a fee strip for access to the proposed second lot extend to a public road. Access as proposed would be by the private road, Linden Lane. At the time of the public hearing Lonergan offered an alternative plan whereby the proposed rear lot, parcel "B" CT Page 1314 would measure 22,500 square feet, thus conforming to the minimum rear lot size requirements of regulations section, 5.25.2.1.6.
In their appeal the plaintiffs claim that the decision of the defendant Board is arbitrary, illegal and an abuse of discretion in that:
a. No legal hardship exists for the variances as required by law;
b. Any hardship that may exist is created by the defendant Lonergan and is therefore legally insufficient to authorize the granting of a variance.
 III
Pursuant to General Statutes, Section 8-6 (a)(3) and Section 25 of the Zoning Regulations of the Town of Branford, the defendant Board has the power and duty "to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured . . ."
Judicial review of the Board's decision is limited to a determination of whether the decision was arbitrary, illegal or an abuse of discretion, Whittaker v. Zoning Board of Appeals,179 Conn. 650, 654. The Board is vested with a large measure of discretion, and the burden of showing the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield,217 Conn. 164, 169. Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution, Burnham v. Planning Zoning Commission,189 Conn. 261, 266 (citation omitted). There is a strong presumption of regularity in the proceedings of an agency such as the Board,Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554,573-74 (citation, quotation marks omitted). CT Page 1315
The function of a zoning board of appeals is to stand "between the public and the individual property owner to protect the latter from unnecessary hardship — hardship, that is, which, owing to some condition affecting his land peculiarly, he would suffer when it is not necessary to do so in order to effectuate the general plan of zoning adopted for the community as a whole", Finch v. Montanari, 143 Conn. 542, 545 (citations omitted).
The granting of a variance must be reserved for unusual or exceptional circumstances, Bloom v. Zoning Board of Appeals,233 Conn. 198, 206-07 (citations omitted). "An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone", Id., at 207 (citation omitted). Accordingly, a zoning board of appeals is authorized to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter if the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance; and neither financial loss nor the potential for economic gain is the proper basis for granting a variance, Id., at 297-08. "The hardship which justifies i board of zoning appeals in granting a variance must be one which originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved",Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 658.(citations omitted).
 IV
The plaintiff claims that the defendant Lonergan failed to show legal hardship, specifically claiming that any hardship was self-created, citing Aitken v. Zoning Board of Appeals,18 Conn. App. 195, as controlling. In Aitken, the applicant, Stosse, sought, and was granted, a variance that reduced the minimum lot frontage from 130 feet to zero feet, permitting Stosse to re-subdivide his CT Page 1316 property and establish a rear building lot with zero frontage. The plaintiff, Aitken, claimed, inter alia, that the trial court erred in finding there was sufficient hardship to support the granting of the variance.. The Appellate Court agreed, finding that Stosse's stated reason for applying for this variance was that he wanted to subdivide his property into two lots, which, absent the variance, he could not do. The court concluded that this situation is self-created, and therefore, not a sufficient reason to depart from the zoning regulations, Id., at 206.
The plaintiff also claims that in order for the variance to be granted, based upon its existing use, the use must be actual, not contemplated, citing Francini v. Zoning Board of Appeals,228 Conn. 785. Francini had applied for a variance of the zoning regulations governing minimum lot requirements, in order to construct a dwelling on an undersized lot. The board denied his application. Francini appealed the board's denial to the superior court, which upheld the board's action. Francini appealed to the Supreme Court, which affirmed the trial court's judgment. On appeal, Francini claimed, inter alia, that the trial court improperly found that his plan to construct a year round dwelling on the property did not constitute a nonconforming use. In upholding the trial court, our Supreme Court stated: "The plaintiff first claims that his plan to construct a year round dwelling on the property constitutes a nonconforming use for which a variance is not required, because such dwelling could have been constructed on the property prior to the enactment of the zoning regulations. This claim is without merit. "Id., at 788-89.
The plaintiff also claims that the hardship is self-created in that Lonergan chose to parcel off that portion of the original lot shown as "Lot 9A" on the subdivision maps (Return f Record, Exhibit K), which fronts on Old Pawson Road. The hardship is also self-created, the plaintiff avers, because Lonergan could provide the required fee access strip from Linden Avenue across parcel A to Parcel B, but chose instead to seek a variance to utilize the private road, Linden Place, for access to Parcel B. The subdivision map submitted, (ROR, Exhibit K) designates the portion of the existing lot fronting on Linden Avenue as "Parcel A". The proposed rear lot is designated as "Parcel B".
The defendant Board, having granted the variance, now argues that Lonergan had no need to seek a variance of the minimum square footage requirement of regulations, Section 25, Schedule CT Page 1317 B, line 3, because the lot sought to be subdivided is a preexisting, nonconforming property. As to the fee strip variance sought, the Board argues that the property is unique by virtue of its long, narrow configuration and the historical fact that the Town chose not to take Linden Place as a public way; the hardship to Lonergan resulted from the application of the regulations to this unique property and was not self-created. Finally, the defendant Board claims that the proposed subdivision and construction of a single-family house would not substantially affect the comprehensive plan.
The defendant Lonergan claims that, absent the variances sought, he would be burdened with excess acreage, and prevented from making a reasonable use of that acreage. He argues that, as to the minimum square footage requirement, the hardship arises from application of the zoning requirements to the pre-existing, nonconforming lot and is not self-created. Lonergan relies on comments of board member Fisher to support Lonergan's contention that the town's failure to take Linden Place as a public road was arbitrary, so as to support the Board's granting of a variance of the requirement that the fee strip connect to a public road. It appears to be undisputed that Lonergan could comply with the public road access requirement of regulations, Section 25.2.1.2. by extending a fee strip from Linden Avenue across Parcel A to the proposed Parcel B. Lonergan claims that such extension would itself require other variances and would increase the non-conformity of Parcel A. The present means of access to his property is as noted, by way of the private road, Linden Place.
 V
The court first addresses the Board's claim that Lonergan was free to subdivide and build without a variance of the requirements regulations, Section 25.2 Schedule B, Line 3.
It is undisputed that the property, 145 Linden Avenue, became a pre-existing nonconforming lot with the institution of zoning in Branford. It is undisputed that the property was utilized, prior to zoning, as the site for a residential dwelling and that the owner has the right to continue such use. So far as the existing dwelling is concerned, the Board has no power to order that the dwelling conform to existing minimum square requirements. But, the defendant Board reasons because the property is being used for residential purposes, and because the owner could have divided the property and built a second dwelling prior to the CT Page 1318 institution of zoning, he can do so now without a variance of Section 25.2, Schedule B, Line 3.
But, "[t]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use." Francini v.Zoning Board of Appeals, supra, at 789, quoting from Lebanon v.Woods 153 Conn. 182, 197, 215 A.2d 112 (1965). The supreme court's application of this principle to the facts in Lebanon v. Woods is instructive. There, the plaintiff developer claimed that, having established a nonconforming use by having constructed 14 dwellings on sections 3 and 4 of a tract of land, consequently the entire tract was a nonconforming use and he could develop the entire tract without reference to the zoning and subdivision regulations, Id. at 196. The supreme court found otherwise, holding that since the tract, other than sections 3 and 4. was not "irrevocably committed" to development as one-quarter-acre lots, that portion of the tract was not nonconforming use as to lots of that size when the zoning regulations were adopted.
Similarly, In Francini, the property owner claimed his plan to construct a year-round dwelling on the subject property constituted a nonconforming use for which a variance was not required because such a dwelling could have been constructed on the property prior to the enactment of zoning, Id. at 789. The supreme court found this claim "without merit", noting that the subject property had been maintained, not as a year-round dwelling, but as a vacant lot. Its use as a year-round dwelling was contemplated, not actual; the owner failed to demonstrate the existence of a nonconforming use. In the instant matter, the proposed buildable lot, parcel B, has been maintained as a lawn for the existing dwelling. At the time zoning regulations were enacted, Parcel B did not exist as a distinct, separate lot. The nonconforming use established at 145 Linden Avenue, entitles the owner to maintain the existing dwelling on nonconforming lot. Absent a variance, this nonconformity does not confer on the owner the right to subdivide the property to construct a second dwelling on a nonconforming lot.
Accordingly, the Board's argument, that the owner needs no variance from the minimum square requirements of the regulations, fails. CT Page 1319
 VI
The defendant Lonergan, then, must, and did, apply for variances to enable him to carry out his plans. To obtain the variances he must establish legal hardship. Lonergan cited the application of the regulations to his long, narrow, nonconforming lot, as the hardship.
Having reviewed the record and the arguments of counsel the court concludes that the defendant Lonergan has established legal hardship. The court finds that the variances granted would not affect substantially the comprehensive zoning plan, in that said granting permits the construction of a single family residence in a residential neighborhood on a rear lot of 22,500 square feet in an R-3 zone.
The court finds that the property, 145 Linden Avenue, is a valid pre-existing nonconforming lot. Zoning left the owner with a 60,000 Square foot lot in an R-3 district with a minimum square footage of 15,000. Under current regulations, the subject property, being 92 feet in width, cannot meet the 100 foot square requirement of Section 25, Schedule B, Line 3. The applicant's hardship stems from the application of the zoning regulations to this long, narrow, legal, non-conforming lot and is not self-created. It is the pre-existing nonconformity which distinguishes this case from Aitken v. Zoning Board of Appeals, supra. InAitken, the applicant sought to re-subdivide a lot the applicant had previously created by subdivision; thus, the hardship inAitken was self created. The court does not read Aitken as standing for the proposition that an application for a variance establishes a self-created hardship. See, rather, Kulak v. ZoningBoard of Appeals, 184 Conn. 479, where the court concluded "the hardship created for the owners of the lot by the 1951 ordinance. The defendants are not barred by the self-created hardship rule from obtaining a variance." Id. at 482. As in Kulak, so, too, here.
The plaintiff's claim that the nonconformity was with reference to a single lot and not to the proposed second lot, is unavailing. Part of the owner's legitimate expectation in ownership of the lot was the right to subdivide it. The plaintiffs claim that Lonergan's hardship is self-created by reason of the previous subdivision of Lot 9A (fronting on Old Pawson Avenue) is unpersuasive. CT Page 1320
The court finds that the applicant's hardship was unique, stemming from its nonconformity and the peculiar configuration of the lot, measuring some 655 feet by 92 feet, and was not common to other properties in the district or town.
The court finds there was sufficient evidence in the record to support the Board's granting a variance of the minimum square requirement of Regulations, Section 25.2 Schedule B, Line 3.
The court finds that there was sufficient evidence in the record to support the Board's granting the application for variance of the fee strip requirements of Regulations, Section 25.2.1.2. The Board could take into consideration the comments of member Fisher regarding the history of "takings" of roads in the area, the fact that access to the existing dwelling is by way of Linden Place, that extension of a fee strip from Linden Avenue to Parcel A would necessitate other variances and properly conclude the variance was warranted.
 VII
The court finds there was sufficient evidence in the record to support the defendant Board's decision to grant the subject application for variances.
The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, that the defendant Board,, in granting the subject application for variances, acted illegally, arbitrarily or in abuse of its discretion.
Accordingly, the appeal is dismissed and judgment may enter in favor of the defendants, the Zoning Board of Appeals of the Town of Branford and William T. Lonergan.
By the Court,
Downey J.